IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

FILED
U.S. DISTRICT COURT

2008 OCT 31  PM 4: 12

CLERK C. Adams
SO. DIST. OF GA.

DAVID OJEDA-SANCHEZ; FLORENCIO
CORTES-GONZALEZ; ALFONSO GUERRERO-
HERNANDEZ; ARTURO MORALES-
MORALES; RAUL MORALES-MORALES;
OSCAR ANTONIO MORALES-RAMIREZ;
JUAN PABLO ORTIZ-ROCHA; and others
similarly situated,

        Plaintiffs,

v.

BLAND FARMS, LLC; MICHAEL HIVELY and
DELBERT BLAND, individually,

        Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION NO.

CV608  096

## COMPLAINT

### I. PRELIMINARY STATEMENT

1.    Plaintiffs are migrant agricultural workers recruited by Defendants in Mexico in 2004, 2005, 2006, and 2007 to work on Defendants' onion farm under H-2A guestworker visas in and around Tattnall County, Georgia.  Plaintiffs file this action on behalf of themselves and other similarly situated workers to secure and vindicate their rights under the Fair Labor Standards Act ("FLSA") and under contract law.

2.    Defendants violated the Fair Labor Standards Act by failing to pay each Plaintiff and other similarly situated worker at least the required average minimum hourly wage for every compensable hour of labor performed in a workweek, including by failing to reimburse Plaintiffs' pre-employment expenses as required by law.

3.    Defendants also breached their employment contracts with Plaintiffs by intentionally manipulating the number of hours recorded for Plaintiffs' pay so as to

systematically fail to pay Plaintiffs their contract wage for all compensable hours worked, and by failing to fully reimburse Plaintiffs for inbound transportation and subsistence.

4. After Plaintiffs' counsel contacted Defendants to seek Plaintiffs' employment records, raise Plaintiffs' wage complaints, and discuss possible resolution of Plaintiffs' claims, Defendants violated the anti-retaliation provisions of the FLSA and their employment contracts with Plaintiffs Arturo Morales-Morales, Raul Morales-Morales, and Oscar Antonio Morales-Ramirez by threatening, refusing to employ, and constructively denying employment to them in an effort to prevent Plaintiffs from bringing their claims to court.

5. Plaintiffs seek their unpaid wages; liquidated damages; actual, incidental, consequential, and compensatory damages; pre- and post- judgment interest, and declaratory and injunctive relief.

## II. JURISDICTION AND VENUE

6. The Court has jurisdiction of this action pursuant to:

    (a)    28 U.S.C. § 1331 (Federal Question);

    (b)    29 U.S.C. § 1337 (Interstate Commerce);

    (c)    29 U.S.C. § 216(b) (FLSA); and

    (d)    28 U.S.C. § 1367 (Supplemental).

7. This Court has supplemental jurisdiction over Plaintiffs' state law claims because they are so related to Plaintiffs' federal claims that they form part of the same case or controversy under Article III, Section 2 of the United States Constitution.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and S.D. Ga. Local Rule 2.1(b), because a substantial part of the claims arose in the Southern District of Georgia and because the Defendants reside there.

9.     This Court is empowered to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## III. PARTIES

10.     At all times relevant to this complaint, Plaintiffs were H-2A agricultural guestworkers admitted into the United States to work for Defendants under the auspices of the H-2A program, 8 U.S.C. § 1188 and 20 C.F.R. §§ 655.0 – 655.113.

11.     Plaintiff Oscar Antonio Morales-Ramirez worked for Defendants in 2004, 2006, and 2007.

12.     Plaintiff Florencio Cortes-Gonzalez worked for Defendants in 2005 and 2007.

13.     Plaintiffs Alfonso Guerrero-Hernandez and Juan Pablo Ortiz-Rocha worked for Defendants in 2006 and 2007.

14.     Plaintiffs David Ojeda-Sanchez, Arturo Morales-Morales, and Raul Morales-Morales worked for Defendants in 2007.

15.     Plaintiffs' FLSA consent forms are attached to this Complaint as part of composite Exhibit A.

16.     At all times relevant to this action, Defendant Bland Farms, LLC ("Bland Farms") was and is a corporation in good standing duly formed under and in accordance with the laws of the State of Georgia. Bland Farms may be served with process through its registered agent, Timothy Harden III, at 688 Walnut Street, Suite 100, P.O. Box 6495, Macon, Georgia 31208.

17.     Defendant Delbert Bland is the owner of Bland Farms. He resides at 6054 GA Highway 121, Reidsville, Georgia 30453.

18.     Defendant Michael Hively is Chief Financial Officer and General Manager of Bland Farms. He resides at 13918 Ga. Hwy 169, Glennville, Georgia 30427.

19.     At all times relevant to this action, Defendants Delbert Bland and Michael Hively had the power to hire and fire Plaintiffs and had control over their conditions of employment.

20.     Defendants Bland and Hively are day to day managers with operational control over Defendant Bland Farms.

21.     At all times relevant to this action, Defendants Bland Farms, Bland, and Hively were employers as defined by the FLSA, 29 U.S.C. § 203(d).

22.     At all times relevant to this action, Defendants Bland Farms and Delbert Bland were employers as defined by the parties' employment contracts.  20 C.F.R. §655.100(b); 20 C.F.R. §§655.102-103.

23.     At all times relevant to this action, Defendants Bland Farms, Delbert Bland, and Michael Hively were engaged in the packing and production of onions in and around Tatnall County, Georgia for sale in interstate commerce.

IV.  STATUTORY AND REGULATORY STRUCTURE OF THE H-2A PROGRAM

24.     The H-2A program was created by 8 U.S.C. § 1188 and is implemented pursuant to the regulations found at 20 C.F.R. §§ 655.0-655.113. The H-2A program authorizes the lawful admission of temporary, non-immigrant workers to perform agricultural labor or services of a temporary nature.

25.     Employers requesting H-2A workers must file a temporary labor certification application with the relevant U.S. DOL Regional Administrator. 20 C.F.R. §§ 655.101(a)(1) and (b)(1). The application must include a job offer that complies with the requirements of 20 C.F.R. §§ 655.102 and 653.501 and must include an agreement to abide by the assurances required at 20 C.F.R. § 655.103.  20 C.F.R. § 655.101(b).  The job offer, commonly referred to as a "clearance order" or "job order," is used to recruit both United States and H-2A workers.

4

26. The terms and conditions in the job order become an employment contract between the employer and employee.

27. As a condition of receiving temporary labor certification for the importation of H-2A workers, agricultural employers are required to pay the highest of the "adverse effect wage rate," or the federal or state minimum wage. 20 C.F.R. § 655.102(b)(9)(i). The "adverse effect wage rate" (known as the "AEWR") is the annual weighted average hourly wage for field and livestock workers for the region as published annually by the U.S. Department of Agriculture in the Federal Register. 20 C.F.R. § 655.107(a).

28. Agricultural employers are further required to "keep accurate and adequate records" of workers' earnings." 20 C.F.R. § 655.102(b)(7).

29. In each of their H-2A contracts, Defendants promised that each worker would earn at least the prevailing rate for the crop activity or at least the AEWR, whichever is higher, for all hours worked in the payroll period. Exs. B-J to this Complaint in Attachment to ETA 790 at section entitled "Wage[] Rates, Special Pay Information and Deductions."

30. In each of their H-2A contracts, Defendants promised to "reimburse workers who complete 50 percent of the work contract period and who are not reasonably able to return the same day to their place of residence for the reasonable cost of transportation and subsistence from the place of recruitment to the place of employment." Exs. B-J to this Complaint in Attachment to ETA 790 at section entitled "Transportation."

31. In each of their H-2A contracts, Defendants promised "to abide by the regulations at 20 [C.F.R. §] 655.103, Assurances, and at 20 [C.F.R. §] 653.501," which govern the labor certification process for H-2A "employers," as defined by 20 C.F.R. § 655.100. Exs. B-J to this Complaint in Attachment to ETA 790 at section entitled "Other Conditions of Employment."

5

32.     In each of their H-2A contracts, Defendants promised to abide by the requirement

of 20 C.F.R. § 655.103 not to cause any person to, or to themselves retaliate or discriminate

against, intimidate, threaten, restrain, coerce, blacklist, or discharge any person who has

exercised or asserted on behalf of himself or others any right or protection under the H-2A

contract, or consulted with an attorney or employee of a legal assistance program. Exs. B-J to

this Complaint in Attachment to ETA 790 at section entitled "Other Conditions of Employment"

(incorporating anti-retaliation provisions at 20 C.F.R. § 655.103(g)).

## V.  STATEMENT OF FACTS

33.     In each year relevant to this Complaint, Defendants imported H-2A workers

under job order contracts for onion planting and harvest work.

34.     For the Fall ("planting") 2004 season, Defendants Bland Farms and Bland filed

job order number GA 7313420 requesting 185 H-2A workers for the period of November 1,

2004 to December 23, 2004.  A copy of this job order is attached as Exhibit B.

35.     Plaintiff Oscar Antonio Morales-Ramirez was employed under the terms of the

2004 planting season job order.

36.     For the Spring ("harvest") 2005 season, Defendants filed job order number GA

7354553 requesting 280 workers for the period of April 7, 2005 to May 27, 2005.  A copy of this

job order is attached as Exhibit C.

37.     For the Fall ("planting") 2005 season, Defendants filed job order number GA

7415206 requesting 225 H-2A workers for the period of October 31, 2005 to December 16,

2005.  A copy of this job order is attached as Exhibit D.

38.     Plaintiff Florencio Cortes-Gonzalez was employed under the terms of the 2005

planting season job order.

6

39.     For the Spring ("harvest") 2006 season, Defendants filed job order number GA 7463653 requesting 325 workers for the period of April 12, 2006 to May 26, 2006.  A copy of this job order is attached as Exhibit E.

40.     For the Fall ("planting") 2006 season, Defendants filed job order number GA 7520036 requesting 225 H-2A workers for the period of October 20, 2006 to December 15, 2006.  A copy of this job order is attached as Exhibit F.

41.     Plaintiffs Alfonso Guerrero-Hernandez, Oscar Antonio Morales-Ramirez, and Juan Pablo Ortiz-Rocha, were employed under the terms of the 2006 planting season job order.

42.     For the Spring ("harvest") 2007 season, Defendants filed job order number GA 7564091 requesting 332 H-2A workers for the period of April 2, 2007 to June 1, 2007.  A copy of this job order is attached as Exhibit G.

43.     Plaintiffs David Ojeda-Sanchez, Florencio Cortes-Gonzalez, Alfonso Guerrero-Hernandez, Arturo Morales-Morales, Raul Morales-Morales, Oscar Antonio Morales-Ramirez, and Juan Pablo Ortiz-Rocha were employed under the terms of the 2007 harvest season job order.

44.     For the Fall ("planting") 2007 season, Defendants filed job order number GA 7613299 requesting 250 H-2A workers for the period of October 22, 2007 to December 14, 2007.  A copy of this job order is attached as Exhibit H.

45.     Plaintiffs Arturo Morales-Morales, and Oscar Antonio Morales-Ramirez were denied employment under the 2007 planting season job order.

46.     For the Spring ("harvest") 2008 season, Defendants filed job order number GA 7613299 requesting 350 H-2A workers for the period of April 7, 2008 to May 30, 2008.  A copy of this job order is attached as Exhibit I.

7

47.     For the Fall ("planting") 2008 season, Defendants filed job order number GA 7713357 requesting 220 H-2A workers for the period of November 3, 2008 to December 12, 2008.  A copy of this job order is attached as Exhibit J.

48.     Plaintiffs Raul Morales-Morales and Oscar Antonio Morales-Ramirez were constructively denied employment under the 2008 planting season job order.

49.     In 2004-2008, each employment contract contained an "Employer's Certification" that stated: "This job order describes the actual terms and conditions of the employment being offered by me and contains all the material terms and conditions of the job." Exs. B-J (attached to this Complaint) in Form ETA 790.

50.     In 2004-2008, the "Employer's Certification" was signed by Defendant Delbert Bland as "Owner, Bland Farms," "Owner,""Owner/Sole Member," or "CFO/GM," except the Spring 2005 job order was signed by Defendant Hively as "CFO/GM."  Exs. B-J (attached to this Complaint) in Form ETA 790.

51.     In 2004-2008, each employment contract contained a "Declaration of Employer," swearing "under penalty of perjury the foregoing is true and correct."  Exs. B-J (attached to this Complaint) in Form ETA 790 at "Declarations."

52.     In 2004-2008, each "Declaration of Employer" was signed by Defendant Delbert Bland as "Owner, Bland Farms" or "Sole Member Bland Farms, LLC."  Exs. B-J (attached to this Complaint) in Form ETA 790 at "Declarations."

53.     The 2004 planting season employment contract promised to pay the applicable AEWR, which was $7.88 per hour.  Ex. B, Attachment to ETA 790 at "Wage[] Rates, Special Pay Information and Deductions."

54.     The 2005 harvest season employment contract promised to pay the applicable AEWR, which was $8.07 per hour.  Ex. C, Attachment to ETA 790 at "Wage[] Rates, Special Pay Information and Deductions."

55.     The 2005 planting season employment contract promised to pay the applicable AEWR, which was $8.07 per hour.  Ex. D, Attachment to ETA 790 at "Wage[] Rates, Special Pay Information and Deductions."

56.     The 2006 harvest season employment contract promised to pay the applicable AEWR, which was $8.37 per hour.  Ex. E, Attachment to ETA 790 at "Wage[] Rates, Special Pay Information and Deductions."

57.     The 2006 planting season employment contract promised to pay the applicable AEWR, which was $8.37 per hour.  Ex. F, Attachment to ETA 790 at "Wage[] Rates, Special Pay Information and Deductions."

58.     The 2007 harvest season employment contract promised to pay the applicable AEWR, which was $8.51 per hour.  Ex. G, Attachment to ETA 790 at "Wage[] Rates, Special Pay Information and Deductions."

59.     The 2007 planting season employment contract promised to pay the applicable AEWR, which was $8.51 per hour.  Ex. H, Attachment to ETA 790 at "Wage[] Rates, Special Pay Information and Deductions."

60.     The 2008 harvest season employment contract promised to pay the applicable AEWR, which was $8.53 per hour.  Ex. I, Attachment to ETA 790 at "Wage[] Rates, Special Pay Information and Deductions."

61.     The 2008 planting season employment contract promised to pay the applicable AEWR, which was $8.53 per hour.  Ex. J, Attachment to ETA 790 at "Wage[] Rates, Special Pay Information and Deductions."

9

62.     Defendants Bland Farms and Delbert Bland retained International Labor Management Corporation and Stan Eury of Vass, N.C., and Michael Bell and Manpower of the Americas of Monterrey, Mexico for the purposes of obtaining, hiring and recruiting H-2A workers.

63.     In 2005-2008, Defendant Hively signed the agreements authorizing International Labor Management Corporation (ILMC) to act as Defendants' agent.

64.     Upon information and belief, Defendants did not pay Michael Bell for his recruiting services.

65.     Michael Bell in turn authorized his agents and employees, including Elisa Lozano of Pachuca, Hidalgo, Mexico, to perform recruiting activities in Mexico.

66.     Upon information and belief, Defendants did not compensate Defendant's local recruiters including Ms. Lozano for their services.

67.     Plaintiffs and other similarly situated workers were required to pay visa and processing fees to Defendants' agents in Mexico, including Elisa Lozano, to secure an offer of employment with Defendants.

68.     Plaintiffs and other similarly situated workers paid, at their own expense, visa and processing fees in excess of $150.

69.     Plaintiffs and other similarly situated workers incurred various immigration and travel-related expenses in order to come to work for Defendants' operations in Georgia.

70.     Plaintiffs and other similarly situated workers were required to pay, at their own expense, a visa reciprocity fee of at least $100.

71.     Plaintiffs and other similarly situated workers were required to purchase, at their own expense, passports necessary to obtain an H-2A visa.

10

72.     Plaintiffs and other similarly situated workers were required to pay their own travel and subsistence expenses in traveling from their homes in the Mexican states of Hidalgo, Tlaxcala, Durango, and San Luis Potosi to the U.S. Consulate in Monterrey, Nuevo Leon, Mexico for the consular interview necessary to obtain an H-2A visa.

73.     Plaintiffs and other similarly situated workers incurred expenses for lodging and subsistence while they waited for their interviews and for the issuance of their visas in Monterrey.

74.     Following the issuance of the H-2A visas, Plaintiffs and other similarly situated workers boarded a bus and paid their own travel expenses from Monterrey, Mexico, to the border at Laredo, Texas.

75.     Each year they participated in a contract, Plaintiffs and other similarly situated workers each paid a $6.00 fee for the issuance of the Customs and Border Patrol Form I-94 required to enter the U.S.

76.     In the years 2005 and 2006, Plaintiffs and other similarly situated workers were then required to pay for the bus from Laredo, Texas to Defendants' operations in Georgia.

77.     In the year 2007, Defendants advanced the cost of Plaintiffs' and other similarly situated workers' bus travel from Laredo, Texas to Defendants' operations in Georgia.

78.     Plaintiffs and other similarly situated workers were required to pay their own subsistence expenses during their journey from Monterrey, Mexico to Defendants' operations in Georgia.

79.     The expenditures set out in paragraphs 67 through 78 were primarily for the benefit of the Defendants within the meaning of 29 C.F.R. §§ 531.32(c) and 778.217.

11

80. The expenditures set out in paragraphs 67 through 78 were made before receipt of Plaintiffs' and other similarly situated workers' first paychecks in each contract period in which they worked.

81. Defendants failed to reimburse Plaintiffs and other similarly situated workers during the first workweek for the costs described in paragraphs 67 through 78 to the extent that these costs brought Plaintiffs' and other similarly situated workers' first week's wages below the federal minimum wage.

82. Defendants did not fully reimburse Plaintiffs at the 50% point of Plaintiffs' work period for all inbound transportation to Georgia and subsistence expenses not previously reimbursed as required by Plaintiffs' employment contracts.

83. Defendants often paid Plaintiffs and other similarly situated workers on a piece rate basis, such that Plaintiffs and other similarly situated workers were paid according to what they picked without regard to the number of hours they worked.

84. Defendants intentionally manipulated Plaintiffs' hours recorded on their paychecks so as to conceal their failure to pay Plaintiffs for all hours worked.

85. In some weeks, Plaintiffs' and other similarly situated workers' weekly piece-rate earnings fell below the applicable federal minimum wage.

86. In some weeks, Plaintiffs' and other similarly situated workers' weekly piece-rate earnings fell below the applicable AEWR.

87. Defendants did not comply with their record-keeping obligations under the FLSA and the H-2A regulations, 20 C.F.R. § 655.102(b)(7), to make, keep, and preserve accurate payroll records.

88. Defendants were on notice of their obligations under the FLSA, as they were previously sued in *Carbajal-Ramirez, et al v. Bland Farms, et al*, Civil Action No. CV601-56,

12

filed May 1, 2001, alleging, *inter alia*, that Defendants had violated the FLSA by failing to reimburse H-2A plaintiffs for costs incurred for the benefit of Defendants that brought the plaintiffs' earnings below the applicable minimum wage.

89.     Defendants were further on notice of their FLSA obligation to pay at least an average of the federal minimum wage for all hours worked, as that obligation was at issue in the *In re Delbert Bland* bankruptcy proceedings.  Civ. Act. No. 01-61187 (S.D. Ga. Bankr.).

90.     Plaintiffs' counsel contacted Defendants on October 2, 2007 by letter and thereafter by phone to request Plaintiffs' payroll records pursuant to 20 C.F.R. § 655.102(b)(7)(iii), to raise Plaintiffs' wage complaints, and to discuss possible resolution of Plaintiffs' claims.

91.     Shortly thereafter, Defendants' agent, supervisor Jose Lopez, contacted Plaintiffs Arturo Morales-Morales and Oscar Antonio Morales-Ramirez in October 2007 to coerce them to abandon their claims against Defendants by telling them that workers who brought lawsuits would not be permitted to return to work with Defendants for the 2007 planting season.

92.     On information and belief, Jose Lopez's actions were at the direction of Defendant Hively.

93.     Defendants Bland Farms, Delbert Bland, and Michael Hively did not employ Plaintiffs Arturo Morales-Morales and Oscar Antonio Morales-Ramirez for the 2007 planting season.

94.     In late September 2008, acting as Defendants' agents, supervisors Jose Lopez and Omar Cruz traveled to the rural community in Tlaxcala, Mexico of La Constancia to find Plaintiffs Raul Morales-Morales, Arturo Morales-Morales, and Oscar Antonio Morales-Ramirez.

13

95.     Defendants' supervisors met Plaintiffs Raul Morales-Morales and Oscar Antonio Morales-Ramirez at or near their homes and requested that they sign statements denying that they were represented by Plaintiffs' counsel Dawson Morton.

96.     Defendants' supervisors explained that Plaintiff Raul Morales-Morales and Oscar Morales-Ramirez could return to work in the 2008 planting season after signing the statement.

97.     Defendants' supervisors were unable to locate Plaintiff Arturo Morales-Morales because he was not in Mexico at the time.

98.     Defendants' supervisors photographed Plaintiffs Oscar Antonio Morales-Ramirez and Raul Morales-Morales, along with Plaintiff Raul Morales-Morales' wife and four children ages 1 ½ to 8 years old.

99.     Defendants Bland Farms, Delbert Bland, and Michael Hively constructively denied employment to Plaintiffs Raul Morales-Morales and Oscar Antonio Morales-Ramirez for the 2008 planting season.

## VI. CLAIMS FOR RELIEF

### COUNT I

### FLSA – Minimum Wage

100.    Plaintiffs incorporate paragraphs 1 - 99 by reference.

101.    Plaintiffs assert this count against all Defendants.

102.    Plaintiffs file this count on behalf of themselves and others similarly situated pursuant to 29 U.S.C. § 216(b).

103.    Plaintiff Florencio Cortes-Gonzalez asserts this claim for the year 2005.

104.    Plaintiffs Alfonso Guerrero-Hernandez, Oscar Antonio Morales-Ramirez, and Juan Pablo Ortiz-Rocha assert this claim for the year 2006.

105.   Plaintiffs David Ojeda-Sanchez, Florencio Cortes-Gonzalez, Alfonso Guerrero-Hernandez, Arturo Morales-Morales, Raul Morales-Morales, Oscar Antonio Morales-Ramirez, and Juan Pablo Ortiz-Rocha assert this claim for the year 2007.

106.   Defendants violated the rights of Plaintiffs and other similarly situated H-2A workers by failing to pay to each worker at least an average of the applicable minimum wage for every compensable hour of work performed in a workweek, in violation of 29 U.S.C. § 206(a).

107.   The violations set forth in this count resulted in part from the failure to reimburse expenses, as detailed in paragraphs 67-78, which were incurred by Plaintiffs and other similarly situated workers primarily for the benefit or convenience of Defendants, prior to the Plaintiffs' and other similarly situated workers' first week of work.  When these expenses are calculated as deductions from Plaintiffs' and other similarly situated workers' first week's pay, as required by law, they cause Plaintiffs' and other similarly situated workers' earnings to be well below the minimum wage for that pay period.

108.   The violations set forth in this count resulted in part from Defendants' practice of paying Plaintiffs and other similarly situated workers based on the quantity of onions planted or harvested without regard to the number of hours Plaintiffs and other similarly situated workers worked as detailed in paragraphs 83-87.

109.   As a result of the Defendants' violations of the FLSA set forth in this count, each Plaintiff and other similarly situated worker is entitled to recover the amount of his unpaid minimum wages and an equal amount in liquidated damages, pursuant to 29 U.S.C. § 216(b).

110.   Defendants' violations set out in Count I were willful within the meaning of the FLSA.

15

COUNT II

Breach of Employment Contract - Wage Provisions

111.   Plaintiffs incorporate paragraphs 1-99 by reference.

112.   Plaintiffs assert this count against Defendants Bland Farms and Delbert Bland.

113.   This count sets forth Plaintiffs' claims for declaratory relief and damages for Defendants' breach of the wage provisions of their employment contracts.

114.   Plaintiff Oscar Antonio Morales-Ramirez asserts this claim for the Fall 2004 contract.

115.   Plaintiff Florencio Cortes-Gonzalez asserts this claim for the Fall 2005 contract.

116.   Plaintiffs Alfonso Guerrero-Hernandez, Oscar Antonio Morales-Ramirez, and Juan Pablo Ortiz-Rocha assert this claim for the Fall 2006 contract.

117.   Plaintiffs David Ojeda-Sanchez, Florencio Cortes-Gonzalez, Alfonso Guerrero-Hernandez, Arturo Morales-Morales, Raul Morales-Morales, Oscar Antonio Morales-Ramirez, and Juan Pablo Ortiz-Rocha assert this claim for the Spring 2007 contract.

118.   For each contract in which each Plaintiff participated, Defendants offered, and Plaintiffs accepted, employment on specific terms and conditions.

119.   Among the terms that Defendants offered and Plaintiffs accepted was payment of at least the applicable AEWR, as detailed in paragraphs 53 to 61, for each hour worked.

120.   Defendants breached the H-2A Contracts by failing to pay each Plaintiff the applicable AEWR for all compensable hours worked in a workweek, as described in paragraphs 83-86.

121.   As a direct consequence of Defendants' breach of Plaintiffs' employment contracts, Plaintiffs suffered economic injury.

122.   Defendants are liable to Plaintiffs for the damages that arose naturally and

16

according to the usual course of things from Defendant's breach, as provided by O.C.G.A. § 13-6-2, including unpaid wages, damages arising from the delay, and pre-judgment interest.

## COUNT III

### Breach of Employment Contract - Transportation Provisions

123.    Plaintiffs incorporate paragraphs 1 to 99 by reference.

124.    Plaintiffs assert this count against Defendants Bland Farms and Delbert Bland.

125.    This count sets forth Plaintiffs' claims for declaratory relief and damages for Defendants' breach of the transportation provisions of their employment contracts.

126.    Plaintiff Florencio Cortes-Gonzalez asserts this claim for the Fall 2005 contract.

127.    Plaintiffs Alfonso Guerrero-Hernandez, Oscar Antonio Morales-Ramirez, and Juan Pablo Ortiz-Rocha assert this claim for the Fall 2006 contract.

128.    Plaintiffs David Ojeda-Sanchez, Florencio Cortes-Gonzalez, Alfonso Guerrero-Hernandez, Arturo Morales-Morales, Raul Morales-Morales, Oscar Antonio Morales-Ramirez, and Juan Pablo Ortiz-Rocha assert this claim for the Spring 2007 contract.

129.    For each contract in which each Plaintiff participated, Defendants offered, and Plaintiffs accepted, employment on specific terms and conditions.

130.    Among the terms that Defendants offered and Plaintiffs accepted was full reimbursement of inbound travel and subsistence expenses after completion of 50% of the work contract.

131.    Defendants breached their employment contracts with Plaintiffs by failing to pay the full transportation and subsistence reimbursement.

132.    As a direct consequence of Defendants' breach of Plaintiffs' employment contracts, Plaintiffs suffered economic injury.

133.    Defendants are liable to Plaintiffs for the damages that arose naturally and according to the usual course of things from Defendant's breach, as provided by O.C.G.A. § 13-6-2, including unpaid wages, transportation and subsistence payments, damages arising from the delay, and pre-judgment interest.

COUNT IV

FLSA – Retaliation

134.    Plaintiffs incorporate paragraphs 1-99 by reference.

135.    Plaintiffs assert this count against Defendants Bland Farms, Delbert Bland, and Michael Hively.

136.    This count sets forth a claim by all Plaintiffs for actual, compensatory and liquidated damages and declaratory and injunctive relief for Defendants' violations of the FLSA's anti-retaliation provision, 29 U.S.C. § 215(a)(3).

137.    Plaintiffs Arturo Morales-Morales and Oscar Antonio Morales-Ramirez assert this claim for the Fall 2007 planting season.

138.    Plaintiffs Raul Morales-Morales and Oscar Antonio Morales-Ramirez assert this claim for the Fall 2008 planting season.

139.    Plaintiffs engaged in protected activity by asserting their rights under the FLSA through the communication of their counsel with Defendants in October 2007 and through their individual assertion of rights pertaining to pay for all hours worked.

140.    Plaintiffs suffered adverse employment action as a result of Defendants' denials and constructive denials of employment for the 2007 and 2008 planting seasons, as well as their threats and intimidation of Plaintiffs through phone calls and visits to their homes in Mexico.

141. Plaintiffs' loss of employment was causally connected to their protected activity, and any proffered explanation by Defendants is a pretext for retaliation.

142. As a result of Defendants' violations of the FLSA set forth in this count, Plaintiffs seek such legal and equitable relief as may be appropriate to effectuate the purposes of 29 U.S.C. § 215(a)(3), including reinstatement and an injunction requiring Defendants to cease retaliating or otherwise discriminating against any worker who asserts his or her rights under the FLSA.

143. Each Plaintiff also seeks the amount of his lost wages, compensatory damages, and an equal amount of liquidated damages pursuant to 29 U.S.C. § 216(b), as well as pre- and post-judgment interest.

### COUNT V

### Breach of Employment Contract - Anti-Retaliation Provisions

144. Plaintiffs incorporate paragraphs 1 to 99 by reference.

145. Plaintiffs assert this count against Defendants Bland Farms and Delbert Bland.

146. This count sets forth Plaintiffs' claims for declaratory relief and damages for Defendants' breach of the anti-retaliation provisions of their employment contracts.

147. Plaintiffs Arturo Morales-Morales and Oscar Antonio Morales-Ramirez assert this claim for their loss of employment in the 2007 planting season.

148. Plaintiffs Raul Morales-Morales and Oscar Antonio Morales-Ramirez assert this claim for their loss of employment in the 2008 planting season.

149. For each contract in which each Plaintiff participated, Defendants offered, and Plaintiffs accepted, employment on specific terms and conditions.

150. Among the terms that Defendants offered and Plaintiffs accepted was a promise not to cause any person to, or to themselves retaliate or discriminate against, intimidate, threaten,

19

restrain, coerce, blacklist, or discharge any person who has exercised or asserted on behalf of himself or others any right or protection under the H-2A contract, or consulted with an attorney or employee of a legal assistance program.

151.    Defendants breached their employment contracts with Plaintiffs by denying them employment for the 2007 planting season and constructively denying them employment for the 2008 planting season in retaliation for their assertion of their contract rights.

152.    Defendants further breached their employment contracts with Plaintiffs by threatening, coercing, and intimidating the Plaintiffs through phone calls and visits to their homes in Mexico.

153.    As a direct consequence of Defendants' breach of Plaintiffs' employment contracts, Plaintiffs suffered economic injury.

154.    Defendants are liable to Plaintiffs for the damages that arose naturally and according to the usual course of things from Defendant's breach, as provided by O.C.G.A. § 13-6-2, including unpaid wages, transportation and subsistence payments, damages arising from the delay, and pre-judgment interest.

WHEREFORE, Plaintiffs respectfully request that this Court grant them the following relief:

(a)    Under Count I:

1.    Allow this action to proceed as a representative action pursuant to 29 U.S.C. § 216(b), for all H-2A workers whose wages were below the applicable FLSA minimum wage;

2.    Declare that Defendants have violated the FLSA as specified above;

20

3.      Grant judgment against Defendants, jointly and severally, and in favor of each Plaintiff and similarly situated worker, in the amount of each Plaintiff's and similarly situated worker's respective unpaid wages as proved at trial, plus an equal amount in liquidated damages, pursuant to 29 U.S.C. § 216(b);

(b)     Under Count II:

1.      Declare that Defendants have breached the contract as specified above;

2.      Grant judgment against Defendants Bland Farms and Delbert Bland, jointly and severally, and in favor of each Plaintiff in the amount of Plaintiffs' damages as arose naturally and according to the usual course of things from such breach and such as the parties contemplated, when the contract was made, as the probable result of such breach;

(c)     Under Count III:

1.      Declare that Defendants have breached the contract as specified above;

2.      Grant judgment against Defendants Bland Farms and Delbert Bland, jointly and severally, and in favor of each Plaintiff in the amount of Plaintiffs' damages as arose naturally and according to the usual course of things from such breach and such as the parties contemplated, when the contract was made, as the probable result of such breach;

(d)     Under Count IV:

1.      Declare that Defendants have violated the FLSA as specified above;

2.      Grant judgment against Defendants Bland Farms, Delbert Bland, and Michael Hively and in favor of Plaintiffs Arturo Morales-Morales, Raul Morales-Morales,

21

and Oscar Antonio Morales-Ramirez in the amount of each Plaintiff's lost wages, compensatory damages, and liquidated damages;

3.     Order such legal and equitable relief as may be appropriate to effectuate the purposes of 29 U.S.C. § 215(a)(3) including reinstatement and an injunction requiring Defendants to cease retaliating or otherwise discriminating against any worker who asserts their rights under the FLSA.

(d)     Under Count V:

1.     Declare that Defendants have breached the contract as specified above;

2.     Grant judgment against Defendants Bland Farms and Delbert Bland, jointly and severally, and in favor of Plaintiffs Arturo Morales-Morales, Raul Morales-Morales, and Oscar Antonio Morales-Ramirez in the amount of Plaintiffs' damages as arose naturally and according to the usual course of things from such breach and such as the parties contemplated, when the contract was made, as the probable result of such breach;

(e)     Award Plaintiffs pre- and post-judgment interest as allowed by law;

(f)     Cast all costs upon Defendants; and

(g)     Award Plaintiffs such further relief, at law or in equity, as this Court deems just and proper.

Respectfully submitted this _31st_ day of October 2008,

_____

Charlotte Sanders, *Lead Counsel*
Georgia Bar No. 435174
Dawson Morton
Georgia Bar No. 525985
Lisa J. Krisher
Georgia Bar No. 429762

22

Georgia Legal Services, Farmworker
Division
104 Marietta St., Suite 250
Atlanta, Georgia 30303
Tel.: 404-463-1633
Fax: 404-463-1623
Email:          csanders@glsp.org
                dmorton@glsp.org
                lkrisher@glsp.org

John. P. Batson
Georgia Bar No. 042150
303 10th St.
Augusta, GA 30901
706-737-4040