# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# STATESBORO DIVISION

| | |
|---|---|
| DAVID OJEDA-SANCHEZ, FLORENCIO CORTES-GONZALEZ, ALFONSO GUERRERO-HERNANDEZ, ARTURO MORALES-MORALES, RAUL MORALES-MORALES, OSCAR ANTONIO MORALES-RAMIREZ, JUAN PABLO ORTIZ-ROCHA, JAVIER GUERRERO-CARRILLO, BERNABE ARCADIO-RUBIO, SAUL HERNANDEZ-ANDABLO, SAMUEL ROJO-ANDABLO, BONIFACIO SANCHEZ-COBARRUBIAS, and others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>BLAND FARMS, LLC, MICHAEL HIVELY, and DELBERT BLAND,<br><br>    Defendants. | Case No. CV608-096 |

## **O R D E R**

Plaintiffs move to compel discovery in this migrant-farmworker, unpaid wages case. (Doc. 53.) Defendants oppose and alternatively seek

a protective order. (Doc. 54.) For the following reasons, plaintiffs' motion should be **GRANTED IN PART** and **DENIED IN PART**.

I. <u>**MOTION TO COMPEL**</u>

Defendants object to furnishing documents responsive to plaintiffs' sixth, seventh, and ninth requests for production. (Doc. 53 at 1.)

A. **Sixth Request**

In plaintiffs' sixth request for production, they seek

> all [of defendants'] payroll documents and supporting documents . . . for any workers employed to operate a time punching machine, drive a crew bus, a truck, field walk, drop onions, load or unload trucks, operate a forklift or to supervise or record field work (whether or not these individuals were designated as "supervisors") at any time during 2004 through 2007.

(Doc. 53-6 at 7-8.) Alleging that defendants undercompensated them by paying "them according to the amount they harvested without regard to their hours worked," plaintiffs request the payroll information. (Doc. 53 at 3.) That is,"[b]ecause the working hours of supervisory and hourly wage employees are correlated with the amount of time plaintiffs worked, th[e] information is reasonably calculated to support plaintiffs' claims of hours shortening by providing corroboration of the length of

2

plaintiffs' workday." (Doc. 53 at 3.) Defendants do not object to handing over the information requested, so long as plaintiffs agree to keep the data confidential. (Doc. 54 at 2-3.) The issue, then, is not whether plaintiffs' motion to compel the production of the documents should be granted but whether the documents should be produced subject to a protective order limiting their dissemination. (*Id.* at 4.)

Pursuant to Fed. R. Civ. P. 26(c), a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . ." *See, e.g., Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1315 (11th Cir. 2001) ("[W]hether good cause exists for a protective order is a factual matter to be decided by the nature and character of the information in question."). While Rule 26(c) articulates a single, "good cause" standard for ruling on a protective order motion, the federal courts have superimposed a somewhat more demanding balancing of interests approach to the rule. *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985); *see also Dow Chemical Co. v. Allen*, 672 F.2d 1262, 1277-78 (7th Cir. 1982); *Andrews v. Eli Lilly & Co.*, 97 F.R.D. 494, 497 (N.D. Ill. 1983); *Wright v. Jeep Corp.*, 547 F. Supp. 871, 872-75

3

(E.D. Mich. 1982); *Richards of Rockford, Inc.*, 71 F.R.D. at 389. They thus "balance [one party's] interest in obtaining the information against the [other party's] interest in keeping that information confidential." *Farnsworth*, 758 F.2d at 1547.

Defendants want a protective order because their payroll records for non-party employees constitute confidential, commercially sensitive, and proprietary information.[1] (Doc. 54 at 5-6.) They cite to several cases for the proposition that payroll records are regularly treated as confidential. (*Id.* at 5.) Most of the cases, however, address personnel files, which involve more complex and varied privacy concerns. In addition to wage information, personnel files often contain "an individual's unlisted address and telephone number, marital status, . . . medical background, credit history (such as requests for garnishment of wages), and other work-related problems." *See Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 365 (6th Cir. 1999) (ADEA wrongful discharge case where employee salaries were not relevant); *Smith v. City of Chicago*, 2005 WL 3215572 at *1-2 (N.D. Ill. Oct. 31, 2005) (unpublished)

---

[1] In addition, defendants state that they have already provided the requested information for all plaintiffs and opt-in plaintiffs. To that extent that plaintiffs are requesting such information, the discovery request is moot.

4

(prohibiting disclosure of payroll records where irrelevant to racial harassment and discrimination claim, but acknowledging that such information would not be confidential if the information is vital to claims made in the litigation); *Miles v. Boeing Co.*, 154 F.R.D. 112, 115 (E.D. Pa. 1994) (allowing discovery of personnel file under protective order); *In re One Bancorp Sec. Litigation*, 134 F.R.D. 4, 12 (D. Me. 1991) (denying motion to compel production of personnel files where movants failed to carry their burden of showing that the material was clearly relevant and that the need for the information sought is not otherwise readily obtainable); *New York Stock Exchange, Inc. v. Sloan*, 22 Fed. R. Serv. 2d 500, 503 (S.D.N.Y. 1976) (denying motion to compel production of personnel files where materials not relevant).[2] The plaintiffs here seek payroll records alone, not *carte blanche* access to defendants' personnel files.

Defendants also contend that disclosure of the information would harm the morale of the workforce and offer criminals an opportunity to commit identity theft. (Doc. 54 at 7-8.) Any harm to morale has likely already occurred, however. Defendants have openly produced the

---

[2] Defendants' citations to Georgia law are also far from convincing (doc. 54 at 8) and are not authoritative in this federal question case. Fed. R. Evid. 501.

5

salaries of five of their supervisors in a motion for summary judgment filed months ago in a related case, *Ramos-Barrientos v. Bland*, No. CV606-089, doc. 169-6 at 12-14; *id.* at doc. 169-8 at 43. As for the defendants' unsubstantiated concerns about the possible use of the information for credit card fraud and identity theft, the Court is unconvinced. Plaintiffs are not explicitly seeking production of the kind of identifying information normally used by such predators, and even if such personal identifiers issue, defendants have not offered any reason to believe that the information would fall into the hands of identity fraudsters. Plaintiffs' counsel, mindful of their professional and ethical obligations, are prohibited from disseminating the information beyond the needs of this case, and the Federal Rules of Civil Procedure and this Court's Local Rules forbid publishing such identifiers in the public record. Fed. R. Civ. P. 5.2; L.R. 8. Nor is it clear from defendants' response how the disclosure of two- to five- year-old wage information is likely to put Bland Farms at a competitive disadvantage.

In short, the defendants have not made a credible showing that the records are deserving of special protection. Defendants cite to *Miles v. Boeing*, where defendant's labor expenses were ordered disclosed subject

to a protective order where it had made a *specific* showing that unbridled disclosure of information would give its competitors an in-depth view of its labor costs, production abilities, price competitiveness in its market, and, to some extent, its manufacturing process. 154 F.R.D. at 114-15. Here, in contrast, defendants, who operate in a very different industry from Boeing, only conclusorily contend that disclosure would reveal Bland's labor costs to its competitors and fail to show clearly how that disclosure would harm its bottom line.[3] That is, defendants offer no specific facts indicating how the competition could use the information against Bland. Accordingly, the Court is not convinced that the disclosure of the records "will work a clearly defined and very serious injury to [defendant's] business." *United States v. Int'l Bus. Mach. Corp.*, 67 F.R.D. 40, 46 (S.D.N.Y. 1975); *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978) (a party seeking a protective order must show not just speculative harm but must make a "particular and specific demonstration of fact as distinguished from stereotyped and

---

[3] Defendants also rather conclusorily contend that they would be forced to disclose their entire H-2A workforce's contact information, which took them years to develop and is thus proprietary and deserving of protection. (Doc. 54 at 6.) While the Court harbors some doubt as to how much protection this information deserves, counsel for plaintiffs are **ORDERED** to maintain strict confidentiality. They shall abstain from disclosing it, absent an order of this Court, to anyone other than their most trusted staff members and experts.

conclusory statements"); 8 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2035 (2008). Since the records sought are directly relevant to plaintiffs' claims and are not otherwise readily obtainable,[4] *In re One Bancorp Sec. Litigation*, 134 F.R.D. at 12, plaintiffs' motion to compel their production is granted and defendants' motion for protective order is denied.

B.  **Seventh Request**

Plaintiffs' seventh request seeks "electronic data files which record any data for the 2004 through 2007 period, stored in [defendants'] computers or in any computers under [their] possession, custody or control that contain payroll or supporting data for any H2-A worker including data on a worker's production, time or attendance. . . ." (Doc. 53-6 at 8-9.) They specifically seek the data in its raw form so that they may analyze the database metadata (i.e., "invisible" data that describes how and by whom a certain data set was collected, created, and formatted), which contains "the mathematical equations used to prepare

---

[4] Defendants' other citations involve cases where the parties agreed that the information was confidential. *Felix v. Davis Moreno*, 2008 WL 3009867 (E.D. Cal. Aug. 1, 2008) (unpublished) (plaintiff unopposed to filing certain personal information, including payroll records, under seal); *Huang v. Gateway Hotel Holdings*, 2008 WL 586249 at *1 (E.D. Mo. Feb. 29, 2008) (parties agreed that protective order was necessary but argued as to its scope).

workers' pay." (Doc. 53 at 6.) Defendants do not object to the production of the *information* in their databases, just their metadata. (Doc. 54 at 9-10.)

Defendants rely upon *Kentucky Speedway, LLC v. National Ass'n of Stock Car AutoRacing, Inc.*, 2006 WL 5097354 (E.D. Ky. Dec. 18, 2006). There the court found a general presumption against production of metadata and held that its production was not warranted absent a more particularized showing of need. *Id.* at *8. While such a general trend may be emerging, *see Wyeth v. Impax Laboratories, Inc.*, 248 F.R.D. 169, 171 (D. Del. 2006), plaintiffs have shown a particularized need for the information -- they need the metadata to determine how their pay was calculated. Consequently, the data must be produced in its original, native format, where possible, so that the metadata can be examined. *See Discoverability of Metadata*, 29 A.L.R. 6th 167. To the extent, however, that plaintiffs seek production of the information in Excel format, plaintiffs are excused if the files are too large to export.

C. **Ninth Request**

The ninth request is clearly the most contentious of the three. Plaintiffs ask defendants to "[p]lease produce [their] complaint or any

9

complaint in [their] possession, custody or control made to the Legal Services Corporation concerning Plaintiffs' counsel or the representation of H-2A workers at Bland Farms." (Doc. 53-6 at 9-10.) Legal Services Corporation is the government entity that funds plaintiffs' counsel, Georgia Legal Services. (Doc. 53 at 7 n.2.) Defendants filed a complaint with the Legal Services Corporation against plaintiffs' counsel, which plaintiffs state is grounds for an FLSA retaliation claim. (*Id.* at 7-8.)

The Legal Services Corporation is still investigating the allegations. (Doc. 54-4 at 2-6.) Since the investigation is ongoing, the retaliation claim is speculative at best. If defendants' complaint is dismissed as groundless, it will provide evidence supporting such a claim. If, on the other hand, defendants' complaint has merit, then the independence of the investigation should be preserved. Consequently, the Court, for the moment at least, finds good cause to grant a protective order and denies plaintiffs' motion to compel the production of their Legal Services Corporation complaint.

## II. CONCLUSION

Plaintiffs' motion to compel (doc. 53) is **GRANTED IN PART** and **DENIED IN PART**.[5] Additionally, the Court hereby **GRANTS** defendants' motion for a protective order as to its Legal Services Corporation complaint. (Doc. 54.) Plaintiffs' second motion to compel (doc. 57) is **DENIED as moot**, since all requested discovery has been produced. (Docs. 78 & 79.) After carefully considering the motions, the Court concludes that an award of sanctions would be unwarranted in this case. Fed. R. Civ. P. 37(a)(5)(A). Finally, defendants' motion for a hearing on the motion to compel (doc. 56) is **DENIED**.

**SO ORDERED** this  31st   day of July, 2009.

/s/ G.R. SMITH
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[5] The parties have also moved for an extension of time within which to designate expert witnesses based upon the issues raised in these motions. (Doc. 62.) That motion is **GRANTED**. Plaintiffs shall have fourteen days from the date of this Order to designate their experts, after which defendants shall have fourteen days to designate theirs.