UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

DAVID OJEDA-SANCHEZ, et al. and all others similarly situated,

Plaintiffs,

v.                                608CV096

DELBERT C. BLAND, et al.,

Defendants.

# ORDER

## I. INTRODUCTION

Plaintiffs David Ojeda-Sanchez, Florencio Cortes-Gonzalez, Alfonso Guerrero-Hernandez, Arturo Morales-Morales, Raul Morales-Morales, Oscar Antonio Morales-Ramirez, Juan Pablo Ortiz-Rocha, and Javier Guerrero-Carrillo were H-2A guest workers in Defendants' onion planting and harvesting operations in and around Glennville, Georgia during the 2005 to 2008 seasons. Doc. ## 51 at 1; 15-2 at 1. Plaintiffs assert several claims against defendants Bland Farms, L.L.C., Delbert Bland, and Michael Hively (collectively "Bland Farms"). *See* doc. # 51 ¶¶ 2-5. In Count I of their Complaint, Plaintiffs claim that Defendants unlawfully reduced their wages below a minimum rate defined by the Fair Labor Standards Act (FLSA). *Id.* ¶¶ 108-119. Before the Court is Plaintiffs' motion to conditionally certify that claim as a collective action under 29 U.S.C. § 216(b). Doc. # 5.

## II. BACKGROUND

The Department of Labor's H-2A program provides for temporary employment of alien agricultural workers when (1) there are insufficient domestic workers, and (2) the employment of aliens will not adversely affect the wages and working conditions of domestic workers. *See* 8 U.S.C. §§ 1184(c)(1), 1188(a)(1). Employers apply for admission of H-2A workers by completing a "clearance order," where the employer certifies "the actual terms and conditions of the employment being offered." 20 C.F.R. § 653.501(d)(3). The clearance order then serves as the underlying contract between the employers and the H-2A guest workers. *Arriaga v. Fla. Pac. Farms, L.L.C.*, 305 F.3d 1228, 1233 n.5 (11th Cir. 2002).

Employers are required to compensate H-2A workers at a rate not less than the federal minimum wage, the prevailing wage rate in the area, or the "adverse effect wage rate" ("AEWR"),[1] whichever is higher. *See* 20 C.F.R. § 655.102(b)(9). Additionally, if an expense paid by the H-2A worker is deemed "primarily for the benefit of the employer," the employer must then reimburse the employee during the first workweek in which the expense arose up to the amount needed to comply with the applicable FLSA minimum rate. *Arriaga*, 305 F.3d at 1237.

With the aforementioned in mind, Plaintiffs allege that Defendants "fail[ed] to pay each worker at least an average of the applicable minimum wage for every compensable hour of work performed in the workweek, in violation of 29 U.S.C. § 206(a)." Doc. # 51 ¶ 115. This alleged failure resulted in part from "Defendants' practice of paying Plaintiffs ... based on the quantity of onions planted or harvested without regard to the number of hours Plaintiffs ... worked," *id.* ¶ 116, and also from Defendants' inadequate reimbursement for certain expenses incurred "primarily for the benefit or conveniences of

---

[1] The AEWR is the minimum wage rate that the Department of Labor determines is necessary to ensure that wages of similarly situated domestic workers will not be adversely affected by the employment of H-2A workers. *See* 20 C.F.R. §§ 655.100(b), 655.107.

Defendants."[2] *Id.* ¶ 117. *See Arriaga*, 305 F.3d at 1237.

### III. MOTION FOR CERTIFICATION OF COLLECTIVE ACTION

Plaintiffs move the Court for a determination that Count I of their Complaint may proceed as a collective action pursuant to § 216(b) of the FLSA. Doc. ## 5 at 1; 51 ¶¶ 108-19.

#### A. FLSA Conditional Certification of Collective Action

The FLSA authorizes a plaintiff seeking relief to bring a "collective action" on behalf of similarly situated employees. 29 U.S.C. § 216(b).[3] FLSA § 216(b) class certification, unlike Rule 23 certification, requires putative class members to affirmatively opt in to the § 216(b) action by providing the court with written consent, communicating an intent to be a class member who will be bound by the court's judgment. *Id.*; *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1216 (11th Cir. 2001). To facilitate this process, courts have applied a two-tiered approach to FLSA certification. *Hipp*, 252 F.3d at 1218 (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995)). The first tier of certification, known as the "notice stage," involves the Court's determination as to whether notice of the pending action should be given to putative class members. *Id.* The Court applies a "fairly lenient standard" when making this determination, which generally results in "conditional certification" of a representative class. *Id.* (emphasis added). The second tier of FLSA certification is generally precipitated by a defendant's motion for "decertification," typically filed after discovery is largely complete. *Id.* At that time, the Court makes a factual determination as to whether the class members are indeed "similarly situated." *Id.*

The case at bar is in the earlier "notice stage" of FLSA class certification. At this stage, the Court conducts a preliminary inquiry into whether there are other employees who (1) are "similarly situated" with regard to their job requirements and pay provisions and (2) wish to opt in to the pending suit. *Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir.1991). Once the Court is satisfied that these two considerations are met, conditional certification is warranted.

Defendants here have conceded that "Plaintiffs have sufficiently shown the desire of additional workers to opt in this case by virtue of the declarations and opt-in notices filed to date." Doc. # 25 at 1. The Court further believes that Plaintiffs and putative class members are "similarly situated" with respect to their job requirements and pay provisions. *See Arriaga-Zacarias v. Lewis Taylor Farms, Inc.*, 2008 WL 5115005, at *8 (M.D. Ga. 12/4/08) (conditionally certifying action of H-2A workers where "Plaintiffs and proposed class members were employed under the same H-2A job orders, had the same pay provisions, had virtually identical job titles and tasks, and allegedly suffered the same FLSA violations"). The Court, therefore, conditionally certifies Count I of Plaintiffs' Complaint as a collective action pursuant to § 216(b) of the FLSA. Plaintiffs may proceed to

---

[2] These expenses included (1) visa processing fees, (2) immigration and inbound travel-related expenses, (3) passport-related expenses, (4) portion of travel, lodging, and subsistence expenses, and (4) border crossing fees. Doc. # 51 ¶¶ 73-86.

[3] "An action to recover the liability prescribed in [FLSA §§ 206 (governing minimum wage standards) and 207 (governing overtime standards)] may be maintained against any employer ... by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).

represent any class member who opts in to this case unless and until Defendants successfully move for decertification.

## B. Court-Facilitated Notice

Although conditional certification is warranted in this case, the Court will facilitate notice only to H-2A guest workers employed by Defendants during the 2007 and 2008 planting and harvesting seasons. *See generally Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169-70 (1989) ("We hold that district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) ... by facilitating notice to potential plaintiffs.").

The FLSA's statute of limitations provides that all proceedings for unpaid wages must commence within two years after the cause of action accrues, unless a claim results from a willful violation of the FLSA, in which case the limitations period is increased to three years. 29 U.S.C. § 255(a). Plaintiffs move the Court to facilitate notice to "[a]ll workers employed by the Defendants under the terms of an H-2A contract" in 2005, 2006, 2007, and 2008. Doc. # 5-2 at 2-3; 51 at 1. The Court, however, cannot comply with Plaintiffs' request as most claims associated with this period either are or will be barred by the FLSA's statute of limitations.

FLSA § 255(a) presently bars any claim resulting from willful and non-willful FLSA violations during the 2005 season and non-willful violations during the 2006 season. Thus, putative class members with these claims can no longer opt in to the collective action if they have not already done so.

The FLSA's statute of limitations has not yet lapsed for willful violations during the 2006 season and non-willful violations during the 2007 season. Putative class members asserting these claims must opt in sometime before the end of this year (seven weeks from the date of this Order), depending on when their underlying claim actually arose. However, significant time would be needed for Defendants to assemble names and contact information for pertinent employees and for the Court to determine the appropriate form of notice to send to putative class members if the parties could not stipulate to one. As a practical matter, additional time would be needed to have the notices printed and mailed, and for putative class members to read the notices and remit the consent-to-sue forms. Because most of these claims would be untimely when putative class members eventually opted in to the collective action, providing court-facilitated notice here will do nothing but stir up a hornets' nest of litigation and further increase the complexities of case management. The Court fails to see the value in facilitating notice to employees holding these claims, and therefore declines to do so.

This leaves only claims resulting from *willful* FLSA violations during the 2007 season and *any* violation during the 2008 season. A cause of action relating to a willful violation during 2007 or non-willful violation during 2008 may commence through sometime around the end of next year (again, with the particular expiration date dependent upon when the underlying claim actually arose). Those with claims for willful violations during the 2008 season must opt in sometime before the end of 2011. As there is little concern that the statute of limitations will lapse on these particular claims, the Court will facilitate notice of this collective action to H-2A workers employed by Defendants during the 2007 and 2008 seasons only.[4]

---

[4] While the Court again notes that any non-willful 2007 violations alleged will probably be barred by FLSA § 255(a), the Court will wait to distinguish those claims from the willful 2007 violation claims at a later date.

3

### C. Equitable Tolling of the FLSA Statute of Limitations

Finally, Plaintiffs argue that the scope of the proposed class is appropriate and within the statute of limitations because they believe it is "highly plausible that Plaintiffs could assert an equitable tolling defense arising out of Defendants' [attempts] to block potential plaintiffs from timely asserting their rights." Doc. # 21 at 10. The Court does not share Plaintiffs' view and will not facilitate their pursuit of mostly invalid claims in the off chance that the statute of limitations will be equitably tolled. *See Wallace v. Kato*, 549 U.S. 384 (2007) ("Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs."); *Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000) ("Equitable tolling should be 'applied sparingly' by the courts.").

Plaintiffs effectively invite the Court to preemptively toll the FLSA's statute of limitations such that all members of the proposed class are given a chance to opt in to the collective action, disregarding the fact that most of these claims either are untimely, or will be once they are asserted. This is not what the doctrine of equitable tolling is designed for. *See Sandvik v. U.S.*, 177 F.3d 1269, 1271 (11th Cir. 1999) (Equitable tolling is available and appropriate where the plaintiff's untimely filing of her complaint is due to "extraordinary circumstances that are both beyond his control and unavoidable even with diligence."). Plaintiffs' argument for equitable tolling is thus premature, and court-facilitated notice will remain limited to 2007-2008 Bland Farms employees.

### IV. CONCLUSION

Plaintiffs' motion to certify an FLSA collective action is *GRANTED IN PART* and *DENIED IN PART*. Doc. # 5. The Court hereby conditionally certifies this case as a collective action for those class members who affirmatively opt in to this case or who have already done so. The Court grants the request for court-facilitated notice as it relates to the 2007 and 2008 seasons, but denies that request as to the 2005 and 2006 seasons. By mailing notice to 2007-2008 Bland Farms H-2A workers, those specific employees will be sufficiently put on notice of the collective action, making it unnecessary–and needlessly confusing–to post the notice on Defendants' farms as requested by Plaintiffs.

It is further **ORDERED** that Defendants shall supply Plaintiffs with contact information pertaining to 2007 and 2008 Bland Farms H-2A guest workers within 30 days of this Order, and, within 45 days, the parties shall either file a stipulated notice form for judicial approval, or they shall cross file *new* proposed notice forms consistent with this Order. Parties may optionally file memoranda of law, not to exceed five pages, in support of their proposal. Lastly, the Court will determine a suitable length of time for Plaintiffs to distribute notice of the collective action when the Court rules on the proper contents of that notice.

This day of 16 November 2009

B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA