UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

DAVID OJEDA-SANCHEZ, et al., and all others similarly situated,

Plaintiffs,

v.                                  608CV096

DELBERT C. BLAND, et al.,

Defendants.

## ORDER

Before the Court are Defendants' motion *in limine* to exclude expert opinion testimony of Mr. Jorge J. Rivero, doc. # 141, and Plaintiffs' motion *in limine* to exclude Dr. Mary Dunn Baker's expert report and testimony, doc. # 155. Plaintiffs retained Mr. Rivero to opine on "the veracity of Defendants' time records during the 2004 through 2008 planting and harvest seasons." Doc. # 155-2 at 7 (Mr. Rivero's amended analysis and report). Defendants challenge the admissibility of Mr. Rivero's opinion testimony under F.R.Evid. 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Defendants have retained Dr. Baker to dispute the statistical soundness of Mr. Rivero's analysis and expert report. Doc. # Doc. # 155-1 at 3 (Dr. Baker's report). Plaintiffs, meanwhile, have challenged the admissibility of Dr. Baker's opinion testimony under Rule 702 and *Daubert*.[1] Doc. # 155.

Federal Rule of Evidence 702 lays the foundation for the Court's *Daubert* analysis:

---

[1] Aside from Plaintiffs' motion *in limine* challenging the admissibility of Dr. Baker's testimony, doc. # 155, Defendants' motion *in limine* is unopposed. *See* doc. ## 200 (Magistrate Judge's Order denying Plaintiffs extension of time to file response to Defendant's motion *in limine*), 240 (Order affirming).

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

*Daubert* requires the Court to act as a gatekeeper to ensure that speculative and unreliable opinions do not reach the jury. 509 U.S. at 589 n.7, 597. As a gatekeeper, the Court must perform "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592-93. The proposed testimony must derive from the scientific method, and good grounds and appropriate validation must support it. *Id.* at 590. The *Daubert* Court listed four non-exhaustive factors for courts to consider in determining reliability under F.R.Evid. 702: (1) whether the theory or technique can be tested; (2) whether it has been subjected to peer review; (3) whether the technique has a high known or potential rate of error; and (4) whether the theory has attained general acceptance within the scientific community. *Id.* at 593-94.

The Court first asks whether Plaintiffs' expert, Mr. Rivero, is "qualified as an expert by knowledge, skill, experience, training, or education" as required by F.R.Evid. 702. Mr. Rivero was employed by the U.S. Department of Labor, Wage and Hour Division, for twenty-six years, serving first as a wage and hour investigator, then as assistant district director, and finally, for the last thirteen years,

as district director for South Florida. Doc. # 155-2 at 4. Since retiring from the Department of Labor, Mr. Rivero has acted as a consultant for businesses in designing and implementing compensation systems to ensure compliance with the Fair Labor Standards Act ("FLSA"). *Id.* He has also served as an expert for both management and employees and testified as an expert in a number of FLSA cases. *Id.* at 4-5. Based on the foregoing, the Court finds that Mr. Rivero is qualified as an expert to testify on matters pertaining to investigations of FLSA violations.

Because Mr. Rivero is qualified as an expert, the Court next addresses whether Mr. Rivero's testimony is based upon sufficient facts, is the product of reliable principles, and whether it applies those principles reliably to the facts of this case. Mr. Rivero's analysis of the alleged FLSA violations in this case was divided into four steps. *Id.* at 8-14. In the first step, Mr. Rivero examined and analyzed a sample of Bland Farms' field tally sheets, pay stubs, and payroll summaries. *Id.* at 8-11. The sample was comprised of time records for a particular weekday (Wednesday), substituting records for Tuesdays or Thursdays where Wednesday records were not available. Doc. # 142 at 2. Based on his observations of this sample, Mr. Rivero noticed "[a] wide variation in the number of hours worked by the employees in the [same] crew." Doc. # 155-2 at 10. He states that a "wide variation in the daily hours worked by field workers in the same crew, performing the same work, and transported together, as in the present case, has long been recognized … as an indicator of inaccurate or false records." *Id.*

In the second step of Mr. Rivero's analysis and report, he examined pay stubs and other summary payroll information provided by Defendants. *Id.* at 11. Based on his examination of these records, Mr. Rivero found no evidence of minimum wage violations. *Id.*

The third step of Mr. Rivero's analysis was to confirm, through employee interviews and review of employee testimony, his conclusion that Defendants' time records were indeed inaccurate. *Id.* at 11-13. Mr. Rivero determined that employee testimony generally indicated that the daily field tally sheet and pay stubs did not show all of the hours that employees worked. *Id.*

The fourth and final step of Mr. Rivero's analysis was to reconstruct the hours actually worked by Plaintiffs and then compute the back wages due them. *Id.* at 13-14. Mr. Rivero concluded that the "best available information from which to reconstruct the actual hours worked by the Plaintiffs is the hours worked shown on the field tally sheets (or other payroll records) for the field walker[s]." *Id.* at 14.

Before continuing with an in-depth *Daubert* analysis on the reliability of Mr. Rivero's analysis and report (particularly the reliability of his chosen sampling technique), the Court finds that any testimony pertaining to Mr. Rivero's analysis of deposition testimony or his phone conversations with selected H-2A employees are excluded because of F.R.Evid. 702. Because the Court will serve as the trier of fact in this case,[2] it will be able to review these forms of evidence on its own. Mr. Rivero's expertise adds nothing to the Court's ability to understand this evidence. Rule 702 likewise excludes Mr. Rivero's opinion on the best available information to reconstruct actual hours worked by Plaintiffs. The Court can weigh evidence on its own, and Mr. Rivero's testimony is not needed to assist that function.

---

[2] No jury demand has been made in this case. *See* doc. # 63 at 7 (indicating that "[t]his case is a non-jury trial").

2

Accordingly, Defendants' motion *in limine* to exclude the opinion testimony of Mr. Jorge Rivero is granted as it relates to (1) Mr. Rivero's analysis of employee depositions and phone interviews and (2) his reconstruction of actual hours worked by Plaintiffs.

The more difficult question is whether Mr. Rivero's analysis of time records and Defendants' payroll information are sufficiently reliable under *Daubert*. This is where Defendants' expert witness, Dr. Mary Baker, comes into play.

In her report, Dr. Baker[3] concludes that "the data that Mr. Rivero presents to illustrate wide variation in hours worked by field crew employee cannot even be reliably used to determine whether, across the relevant time frame, there is a variation in hours worked...." Doc. # 155-1 at 4. Dr. Baker opines that (1) "Mr. Rivero's conclusions are based on an examination of a small number of non-randomly selected samples of daily time-keeping records," (2) "the assumptions that he makes about the employment setting at Bland Farms are unrealistic," and (3) "he did not carefully review all of the available data pertinent to the measurement of the H-2A workers [sic] daily total hours." *Id.* at 4-5.

---

[3] Dr. Baker is a "labor economist and applied statistician with extensive experience in statistical analyses of employment practices, processing and analyzing time-keeping and payroll data, selecting and working with representative samples of population data and in the estimation of the value of alleged economic loss." Doc. # 155-1 at 5. She has "testified in federal courts and other judicial settings on behalf of both plaintiffs and defendants" and "presented seminars on the economics and statistics of employment discrimination and the computation of the value of economic losses resulting from a variety of events and actions." *Id.* Based on the foregoing, the Court finds that Dr. Baker is qualified as an expert to testify on the statistical reliability of Mr. Rivero's analysis of alleged FLSA violations at Bland Farms.

Plaintiffs' motion *in limine* states that Dr. Baker uses "incorrect values and conflates statistical concepts based on a hypothetical situation calculated to produce misleading conclusions." Doc. # 155 at 1. Plaintiffs thus argue that Dr. Baker uses the wrong values for sample size and population to maximize the margin of error associated with Mr. Rivero's selected sample of Defendants' time records. *Id.* at 4. Mr. Rivero analyzed thirty-one days in Defendants' planting seasons and twenty-eight days in the harvest seasons. Doc. # 155-2 at 16-17. Dr. Baker disaggregated the data by year, reducing Mr. Rivero's sample size to five to nine days per season. This produced margins of error ranging from 28.5% to 40.6%. Doc. # 155-1 at 11. suggest

Although the Court does have concerns as to why Dr. Baker disaggregated the sample data,[4] *Daubert* obliges the Court to act only as a gatekeeper. So long as the Court deems Dr. Baker's opinion to be reliable (which it does here), there is no need at this time to address

---

[4] The disagreement over the proper values to use when calculating the margin of error has more or less turned into a battle of experts. Dr. Baker maintains that the disaggregation of Mr. Rivero's sample data is appropriate because of different work conditions from one season to another. Doc. # 140 at 31 (deposition of Dr. Baker). Plaintiffs' expert, Dr. Christopher McKelvey, meanwhile, opines that Mr. Rivero's sample should not be disaggregated and that the true sample size is "31 days for the planting season and 28 days for the harvest season" collectively. Doc. # 155-3 at 4. Dr. McKelvey goes even further, boldly suggesting that "the margin of error is equal to zero" when the total population is set equal to the number of workweeks rather than the number of workdays (i.e., the sample and population are equal). *Id.* at 5. These differing opinions for computing margin of error bring to mind Mark Twain's observation: "Figures often beguile me, particularly when I have the arranging of them myself; in which case the remark attributed to Disraeli would often apply with justice and force: 'There are three kinds of lies: lies, damned lies, and statistics.'" Mark Twain, *Chapters from My Autobiography,* 185 North American Review, No. DCXVIII, July 5, 1907, at 465, 471.

3

the credibility of her testimony. *See Att'y Gen. of Okla. v. Tyson Foods, Inc.*, 565 F.3d 769, 779 (10th Cir. 2009) ("[W]hile *Daubert*'s standards must still be met, the usual concerns regarding unreliable expert testimony reaching a jury obviously do not arise when a district court is conducting a bench trial. Thus, the 'scope of ... review is quite narrow.'") (citations omitted). Plaintiffs and their rebuttal expert may certainly disagree with the methodology used by Dr. Baker, but that disagreement does nothing to undermine the reliability of her testimony. Plaintiffs' motion *in limine* to exclude the testimony of Dr. Baker is thus denied. Doc. # 155.

This returns the Court to the issue of whether Mr. Rivero's report and testimony are sufficiently reliable under Rule 702 and *Daubert*. The Court certainly recognizes the value in Mr. Rivero's testimony since it will likely assist the Court in understanding any inaccuracies in Defendants' time records and payroll information. Given the value of Mr. Rivero's testimony, the Court finds his testimony to be sufficiently reliable and will consider his report and testimony as it relates to his analysis of Defendants' time records and payroll information. Although Mr. Rivero's testimony is admissible, note that the Court may later find that his sample is indeed unrepresentative of the relevant workdays at Bland Farms. If that is the case, the Court will afford minimal weight to Mr. Rivero's opinion. That decision, however, will be made by the Court at trial.

For the foregoing reasons, Defendants' motion *in limine* to exclude the opinion testimony of Mr. Jorge J. Rivero is ***GRANTED*** in part and ***DENIED*** in part. Doc. # 141. The motion is granted as to any testimony that relates to (1) Mr. Rivero's analysis of deposition testimony and phone interviews with H-2A employees and (2) his reconstruction of actual hours worked by Plaintiffs. It is denied as to any testimony related to his analysis of Defendants' time records and payroll information. Plaintiffs' motion *in limine* to exclude Dr. Mary Dunn Baker's expert report and testimony is ***DENIED***. Doc. # 155.

This day of 10 May 2010

/s/ B. Avant Edenfield
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA