**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**STATESBORO DIVISION**

DAVID OJEDA-SANCHEZ, et al., and all
others similarly situated,

Plaintiffs,

v.                    608CV096

BLAND FARMS, LLC; MICHAEL HIVELY,
and DELBERT BLAND, individually,

Defendants.

## ORDER

## I. INTRODUCTION

Plaintiffs in this case were H-2A guest workers in Defendant Bland Farms' onion planting and harvesting operations. They assert several claims against Defendants for violations of the Fair Labor Standards Act (FLSA) and for breach of contract.

Before the Court are Defendants Michael Hively's ("Hively") and Delbert Bland's ("Bland") motions for summary judgment, doc. ## 143, 144, and Defendant Bland Farms' ("Bland Farms") motion for partial summary judgment, doc. # 145. Also before the Court is Plaintiffs' cross motion for partial summary judgment. Doc. # 156.

The Court hereby enters this consolidated Order to address all pending motions in this case.

## II. BACKGROUND[1]

Bland Farms is a limited liability company that produces onions in Tatnall County, Georgia. Doc. # 149 at 1 (Bland declaration).

Plaintiffs are migrant farm workers from Mexico who worked for Bland Farms under the Department of Labor's (DOL) H-2A guest worker program during various seasons between 2004 and 2008. Doc. # 153 at 2 (Therese Bouwense declaration).[2]

The DOL's H-2A program allows the temporary employment of alien farm workers within the United States if an employer can show that: (1) there are insufficient domestic workers who are willing, able, and qualified to perform the work at the time and place needed, and (2) the employment of aliens will not adversely affect the wages and working conditions of domestic workers. *See* 8 U.S.C. §§ 1184(c)(1), 1188(a)(1). Federal regulations establish the conditions under which these alien workers are permitted to work in the United States An employer must compensate H-2A workers at a rate not less than the federal minimum wage, the prevailing wage rate in the area, or the "adverse effect wage rate" ("AEWR"),[3] whichever is higher. *See* 20 C.F.R. § 655.122(l).

Employers apply for admission of H-2A workers by completing a "clearance order," in which the employer certifies "the actual terms and conditions of the employment being offered." 20 C.F.R. § 653.501(d)(3). The clearance order then serves as the underlying contract between the employers and the H-2A guest workers. *See Arriaga v. Fla. Pac. Farms, LLC*, 305 F.3d 1228, 1233 n.5 (11th Cir. 2002).

---

[1] This section serves only as a brief overview of the factual and procedural history of this case. For the sake of clarity, much of the legal and factual background is reserved for later in this Order

[2] Therese Bouwense has been employed as a staff accountant for Bland Farms since March 2004. Doc. # 153 at 1.

[3] The AEWR is the minimum wage rate that the DOL determines is necessary to ensure that wages of similarly-situated domestic workers will not be adversely affected by the employment of H-2A workers. *See* 20 C.F.R. § 655.103(b).

Beginning with the Spring harvest season of 2002, and ending with the Spring harvest season of 2007, Bland Farms contracted with International Labor Management Corporation ("ILMC") to assist Bland Farms in obtaining agricultural clearance orders for H-2A workers. Doc. # 146 at 5 (Defendants' brief in support of motions for summary judgment). ILMC offered Bland Farms a turnkey program, whereby ILMC would render "consulting and administrative services necessary to assist [Bland Farms] in participating in the H-2A program." Doc. # 197-5 at 16 (2007 Agency and Indemnity Agreement). Bland Farms in turn received "domestic and/or supplementary foreign workers under the labor certification process for temporary agricultural employment ... to meet the seasonable labor requirements." *Id.*

ILMC worked with Consular Services International ("CSI"), a private employment service agencies in Monterrey, Mexico. Doc. # 197-13 at 2 (Lee Wicker Declaration).[4] CSI "handled all necessary application and consular services, including contacting workers, completing and submitting electronically the visa application, and shepherding workers through the consulate process." *Id.*

Named Plaintiffs David Ojeda-Sanchez, Florencio Cortes-Gonzalez, Alfonso Guerrero-Hernandez, Arturo Morales-Morales, Raul Morales-Morales, Oscar Antonio Morales-Ramirez, Juan Pablo Ortiz-Rocha, and Javier Guerrero-Carrillo filed the original Complaint in this case on 10/31/08. Doc. # 1. They have since been joined by seventy opt-in Plaintiffs. *See* doc. ## 99 (Order granting conditional certification of FLSA collective action); 51 (First Amended Complaint joining four opt-in

---

[4] Lee Wicker provided consulting services to ILMC and negotiated the original agreement between ILMC and Bland Farms. Doc. # 197-13 at 1.

Plaintiffs); 119 (Second Amended Complaint joining forty-seven opt-in Plaintiffs). Plaintiffs' counsel moved for leave to file a Third Amended Complaint to join twenty-one additional opt-in Plaintiffs to the Complaint's contractual claims, doc. # 250, but the Court denied that motion, doc. ## 256 (Order denying leave to file third amended complaint); 259 (Order denying Plaintiffs' motion for reconsideration). Nineteen of the twenty-one opt-in Plaintiffs, however, are joined to the FLSA claims because they timely consented to the FLSA collective action. Doc. # 259. The FLSA claims of Carmelo Hernandez-Rubio and Juan Jose Hernandez de la Cruz are not joined because they filed their consents to sue on 5/17/10, a month after the close of the opt-in period. *Id.*

Plaintiffs' Second Amended Complaint, doc. # 119, is thus the operative Complaint in this litigation. In their Second Amended Complaint, Plaintiffs assert six claims for relief.

Count I is a claim made under the wage and hour provisions of the FLSA. Plaintiffs allege that Defendants "violated the rights of Plaintiffs, [opt-in] Plaintiffs, and other similarly situated H-2A workers by failing to pay each worker at least an average of the applicable minimum wage for every compensable hour of work performed in a workweek, in violation of 29 U.S.C. § 206(a)." Doc. # 119 at 20.

Count II is a claim for breach of contract and appears to be the contractual equivalent of Count I. Plaintiffs allege that Defendants Bland Farms and Bland breached the terms of the H-2A clearance order "by failing to pay each Plaintiff ... the applicable AEWR for all compensable hours worked in a workweek...." *Id.* at 24.

Count III is also a claim for breach of contract. Plaintiffs allege that Defendants

Bland Farms and Bland breached the terms of the H-2A clearance order by failing to reimburse "all inbound travel and subsistence expenses after completion of 50% of the work contract." *Id.* at 28.

Count IV is a claim made under the anti-retaliation provisions of the FLSA. Plaintiffs Arturo Morales-Morales, Raul Morales-Morales, and Oscar Antonio Morales-Ramirez (the "Retaliation Plaintiffs"), claim to have "engaged in protected activity by asserting their rights under the FLSA through the communication of their counsel with Defendants in October 2007 and through their individual assertion of rights pertaining to pay for all hours worked." *Id.* at 29. These Plaintiffs allege that they "suffered adverse employment action as a result of Defendants' denials and constructive denials of employment for the 2007 and 2008 Fall planting seasons, as well as their threats and intimidation of Plaintiffs through phone calls and visits to their homes in Mexico." *Id.* at 29-30.

Count V is the contractual equivalent of Count IV. Plaintiffs allege that Defendants Bland Farms and Bland breached the terms of the H-2A clearance order by "denying them employment for the 2007 Fall Planting season and constructively denying them employment for the 2008 Fall Planting season in retaliation for their assertion of rights protected under the H-2A contract." *Id.* at 31. Plaintiffs further claim that Defendants breached the employment contracts by "threatening, coercing, and intimidating the Plaintiffs through phone calls and visits to their homes in Mexico." *Id.*

Count VI is again a claim for breach of contract and is largely repetitive of Count II. Plaintiffs argue that the H-2A clearance orders incorporated H-2A regulations, including assurances that that the employer will pay the minimum wage and will comply with

applicable Federal, state, and local employment-related laws. *Id.* at 35-36. Plaintiffs allege that Defendants "breached their contracts when they failed to pay Plaintiffs and [op-in] Plaintiffs at least the applicable federal minimum wage for each compensable hour of work in a workweek." *Id.* at 36.

## III. MOTIONS FOR SUMMARY JUDGMENT

Defendants have moved the Court for summary judgment. *See* doc. ## 143 (Hively's motion for summary judgment); 144 (Bland's motion for partial summary judgment); 145 (Bland Farms' motion for partial summary judgment). Defendants argue that Bland is not an employer for FLSA and H-2A purposes because "[t]he uncontested facts establish that [he] had no involvement in the day to day activities of H-2A farm workers...." Doc. # 146 at 3 (Defendants' brief in support of motions for summary judgment). Defendants similarly argue that Hively is not an employer because "the uncontested facts demonstrate that [he] had very little involvement in the daily activities in the field and that he had no prior knowledge of the actions of the supervisors in Mexico." *Id.* at 3. Bland Farms also moves for "judgment as a matter of law as to the statute of limitations on the breach of contract claim" and for "judgment as to liability for the payment of recruitment and processing fees allegedly incurred by the workers in obtaining employment at Bland Farms." *Id.* at 3-4.

Plaintiffs have likewise moved the Court for summary judgment, contending that:

(1) Under Count I, undisputed facts establish that Defendants failed to reimburse Plaintiffs for costs incurred for the benefit of Defendants at the first regular pay day following Plaintiffs' purchases as required by the FLSA and explained in *Arriaga*.

(2) Under Count VI, undisputed facts establish that Defendants Bland Farms and Bland breached Plaintiffs' employment contract for failing to reimburse Plaintiffs for costs incurred for the benefit of Defendants, as required by the FLSA and as incorporated into the contracts by 20 C.F.R. § 655.135(d).

(3) Under Count II, undisputed facts establish that Defendants Bland Farms and Bland breached Plaintiffs' employment contracts by failing to keep accurate or reliable payroll records.

(4) Under Count I, undisputed facts show that Defendants' conduct was willful such that a three-year statute of limitations should be applied to Plaintiffs' Count I FLSA claims.

(5) Under all Counts, undisputed facts establish that Defendant Bland is an employer under the FLSA and/or H-2A regulations.

(6) Under Counts I and IV, undisputed facts establish that Defendant Hively is an employer under the FLSA.

(7) Defendants' fourth defense of laches and estoppel are invalid as a matter of law as to FLSA and H-2A claims.

*See* doc. # 156.

After spending considerable time comprehending the flood of pleadings exchanged among the parties, the Court has decided that the contested issues in the pending motions can be divided into five categories:

(1) Bland's and Hively's status as FLSA and H-2A employers;

(2) Defendants' FLSA and contractual liability for pre-employment expenses;

(3) Defendants' liability for allegedly inaccurate and payroll records;

(4) Statute of limitations for Plaintiffs' FLSA and contractual claims;

(5) Viability of Defendants' laches and estoppel defense.

The Court divides its analysis accordingly and addresses each of the above categories in turn. But before turning to the parties' motions, the Court pauses to acknowledge that its decision in *Ramos-Barrientos* resolved a number of legal issues that are again disputed here. *See e.g., Ramos-Barrientos, et al. v Delbert C. Bland et al.*, No. 606CV089, doc. ## 229 at 13, 15 (finding that "Bland Farms did not authorize anyone to collect recruiting or processing fees from H-2A workers in Mexico" and that the "six-year statute of limitations specified in O.C.G.A. § 9-3-24" applied to Plaintiffs' contractual claims); 239 (denying Plaintiffs' motion for reconsideration on agency issue), 250 at 5 (holding that Defendants are "entitled to a § 203(m) wage credit for reasonable cost of housing provided to … H-2A employees" because it was "'customarily furnished' and indeed required by H-2A regulations").

Although the Court recognizes that Plaintiffs' litigation strategy in this case differs somewhat from that in *Ramos-Barrientos*, the Court is nonetheless guided by its earlier decision because of the very evident similarities between the two cases.[5] With that said, much of the legal analysis from *Ramos-Barrientos* may be repeated here for the sake of completeness and for those unfamiliar with the Court's earlier decision.

---

[5] Documents from *Ramos-Barrientos* are littered throughout the record in this case. *See, e.g.,* doc. # 197-9 (Bland deposition from *Ramos-Barrientos*), 197-12 (Bouwense deposition from *Ramos-Barrientos*). Counsel for plaintiffs in *Ramos-Barrientos* likewise made use of documents filed in this case. *See Ramos-Barrientos*, No. 606CV089, doc. # 228-1 (Lee Wicker declaration from *Ojeda-Sanchez*).

## A. Summary Judgment Standard

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." F.R.Civ.P. 56(c). In determining whether summary judgment is appropriate, the facts and inferences from the record are viewed in the light most favorable to the non-moving party, and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The moving party is "entitled to a judgment as a matter of law" when the nonmoving party fails to make a sufficient showing on an essential element of his case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). The mere existence of a scintilla of evidence is insufficient; rather, there must be evidence upon which reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## B. Delbert Bland and Michael Hively Employer Status

### i. FLSA Wage and Hour

The defendants in *Ramos-Barrientos* did not contest their status as FLSA employers, so this issue is addressed for the first time here. Under the FLSA, an employee can bring an action "against any employer" for claims involving wages and hours. 29 U.S.C. § 216(b). An employer includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." *Patel v. Wargo*, 803 F.2d 632, 637 (11th Cir. 1986) (quoting 29 U.S.C. § 203(d)). Whether an individual falls within this definition "does

not depend on technical or isolated factors but rather on the circumstances of the whole activity." *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008) (quotations omitted). The defendant's status turns on whether the evidence establishes that "as a matter of economic reality [the employee] was dependent upon [the defendant]." *Patel*, 803 F.2d at 635.

This question, in turn, depends on a series of individual factual inquiries, including (1) whether the alleged agricultural employer has the power to direct, control, or supervise the worker of the work performed; (2) whether the alleged agricultural employer has the power to hire or fire, modify the employment conditions, or determine the pay rates or the methods of wage payment for the worker; and (3) the alleged employer's ownership in the employing company and whether the individual exercises significant control over the business's functions. *See Morales-Arcadio v. Shannon Produce Farms, Inc.*, 2007 WL 2106188, at *24 (S.D. Ga. 7/18/2007).

"The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Patel*, 803 F.2d at 637-38 (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983)). Thus, to be personally liable, "an officer must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee." *Id.* at 638.

Here, it is accepted that Bland and Hively did not have any direct responsibility for the supervision of Plaintiffs or other H-2A employees, so the Court limits its inquiry to whether they were involved in the day-to-day operations of Bland Farms. The Court must

also consider whether Bland and Hively had the power to hire or fire Plaintiffs or modify conditions of their employment. Defendants argue that "[a]lthough Delbert Bland and Michael Hively hold high positions at Bland Farms, neither of them handle the day-to-day operations at the level to be considered 'employers' under the FLSA." Doc. # 146 at 10. Plaintiffs argue the opposite, suggesting that "Defendants Bland and Hively were involved in day-to-day operations and had additional indicators of employer status, including the power to hire and fire Plaintiffs, and the power to set the terms and conditions of Plaintiffs' employment." Doc. # 157 at 24.

The Court agrees with Plaintiffs in that Bland and Hively are involved in the day-to-day operations of Bland Farms. Bland is the sole shareholder and owner of Bland Farms. Doc. # 149 at 2 (Bland Declaration). Although he has delegated much of his management authority to Hively, Bland is still involved in onion sales. *See* doc. # 123 at 26 (Bland deposition). Hively, meanwhile, is Bland Farms' General Manager and CFO. Doc. # 121 at 14 (Hively deposition).

But the performance of managerial functions alone is not enough. *See Baystate Alt. Staffing, Inc. v. Herman*, 163 F.3d 668, 679 (1st Cir. 1998) ("If ... the significant factor in the personal liability determination is simply the exercise of control by a corporate officer or corporate employee over the 'work situation,' almost any supervisory or managerial employee of a corporation could be held personally liable for the unpaid wages of other employees."). Thus, in addition to a purported employer's "authority to manage certain aspects of [a] business's operations on a day-to-day basis," the Court must also consider any "personal responsibility for making decisions about the conduct of the business that contributed to the violations of the [FLSA]." *Id.* at 678.

This leads the Court to consider other indicia of employer status, including the power to hire and fire Plaintiffs and the power to set the terms and conditions of their employment. Defendants concede that Bland and Hively do indeed have the power to hire and fire Plaintiffs and the power to influence their conditions of employment. Doc. # 58 at 4.[6] But an ability to affect H-2A employment is insufficient where there is no evidence that the alleged employer *actually* used his employment related powers. *See Patel*, 803 F.2d at 638 (While acknowledging that the defendant could have played a greater role in the operations of the company, the Eleventh Circuit focused on the role that he did play in concluding that he "lacked the operational control necessary for the imposition of liability as an 'employer' under the FLSA."); *see also Wirtz v. Pure Ice Co*, 322 F.2d 259, 262 (8th Cir. 1963) ("There is little question from the record but what Thompson as the majority stockholder and dominant personality in Pure Ice Company, Inc., could have taken over and supervised the relationship between the corporation and its employees had he decided to do so. A careful reading of the record, however, indicates that he did not do so.").

Plaintiffs here have presented no evidence that Defendants Bland and Hively ever hired or fired H-2A employees in their managerial capacities at Bland Farms. They have also presented no evidence that Bland and Hively determine the terms and conditions of H-2A

---

[6] In their Second Answer, Defendants admitted that Bland and Hively had the power to hire and fire Plaintiffs and the power to modify conditions of their employment. Defendants attempted to retract this admission in their Third Answer. Doc. # 119 at 3-4. The Court, however, did not allow this retraction, finding that "[a]bsent a change in the theory or scope of this case, Defendants needed this Court's permission to amend its Second Answer and withdraw admissions previously made...." Doc. # 245 at 2.

employment. Aside from the signing of H-2A clearance orders and the initial decision to use H-2A laborers in Bland Farms' operations, there is nothing to indicate that Bland or Hively exercised employment related powers over Plaintiffs or any other H-2A workers.

Because they simply lack the operational control necessary to pin them with individual liability for unpaid wages, the Court holds that Defendants Bland and Hively are not FLSA employers as a matter of law.

### ii. Contractual Claims

Bland and Hively are likewise not employers under H-2A regulations. As Plaintiffs correctly explain themselves:

> The H-2A regulations rely on the FLSA's definition of employ "as to suffer or permit to work." 29 U.S.C. § 203(g). Accordingly the H-2A regulations define employer as "a person, firm, corporation, or other association or organization which suffers or permits a person to work[.]" 20 C.F.R. § [655.103(b)]. And the regulations specify that an employer-employee relationship exists where the employer has the power to hire or fire the employees, supervise or otherwise control the work of the employees. [*Id.*] The[se] factors are identical to factors commonly used by courts to evaluate employer status under the FLSA.

Doc. # 157 at 23-24.

Because Bland and Hively are not FLSA employers, *see supra* Section III.B.i., they are also not employers pursuant to H-2A regulations. Bland and Hively, therefore, are not individually liable for any of Plaintiffs' contractual claims.

### iii. FLSA Anti-Retaliation[7]

In October 2007, Georgia Legal Services ("GLS") sent a letter to Bland Farms, requesting payroll information and employment records for the named Plaintiffs in this case. *See* doc. # 6-4. Responding to this letter, Hively asked GLS to provide Bland Farms "with documents signed and dated by each employee authorizing the release of … payment records." Doc. # 6-5. Omar Cruz[8] was informed that a lawyer "was demand[ing] the release of … personal files and information" of Plaintiffs. Doc. # 28-1 at 2. Cruz then instructed Jose Lopez Gomez[9] to "make calls to various workers to see if they were represented by [Georgia] Legal Services."[10] Doc. # 122-1 at 21 (Lopez Gomez deposition).

Cruz (later joined by Lopez Gomez) travelled to Mexico in September 2008 "with the purpose of verifying whether certain workers who had in the past worked for Bland Farms were aware of [a] civil action brought against Bland Farms … using the name of several workers as the plaintiffs." Doc. # 28-1 at 2. Cruz suggests that the "sole purpose of [the] visit was to assure that [Plaintiffs] were aware of [this litigation] and to obtain their consent to release [the documents requested

---

[7] For a more detailed discussion of the facts underlying Defendants' alleged retaliation, see this Court's 3/4/09 Order, which granted in part Plaintiffs' motion for a protective order. Doc. # 36.

[8] Omar Cruz is Bland Farms' Development Manager and Production Director. Doc. # 28-1 at 1 (Cruz Affidavit).

[9] Jose Lopez Gomez is a field supervisor at Bland Farms. Doc. # 122 at 5.

[10] Bland Farms suggests that Cruz called H-2A workers to verify representation because "Georgia Legal Services had previously informed Bland Farms, LLC that it represented H-2A workers who later disclaimed any representation by GLS." Doc. # 148 at 2 (Sharon Spell declaration).

by GLS] in the event [Plaintiffs] had contracted for the services of the lawyer." *Id.* During their trip to Mexico, Cruz and Lopez Gomez visited the homes of Oscar Morales-Ramirez and Raul Morales-Morales, two of the Retaliation Plaintiffs.[11]

Of course, "both parties have submitted affidavits describing the events that took place there, and each side has painted a very different picture of the encounters." Doc. # 36 at 2. Cruz attests that Morales-Ramirez and Morales-Morales were very hospitable, welcoming Cruz and Lopez Gomez into their homes and introducing them to their families. *See generally* Doc. # 28-1 at 2-7, 9-11 (Cruz and Lopez Gomez Affidavits). Plaintiffs, meanwhile, paint the encounter in a far more sinister light, urging that Cruz and Lopez Gomez were abusive and coercive, effectively strong-arming Morales-Ramirez and Morales-Morales into signing a document disavowing their participation in this lawsuit. The Retaliation Plaintiffs allege that they were denied employment after Cruz's trip to Mexico.

Clearly, the factual uncertainty surrounding the purported retaliation precludes summary judgment on Plaintiffs' retaliation claims. Defendants, however, have moved the Court to dismiss Bland from Counts IV and V of Plaintiffs' Complaint and Hively from Count IV.

The FLSA specifies that "[a]ny *employer* who violates the provisions of § 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of § 215(a)(3)." 29

U.S.C. § 216(b) (emphasis added). Section 215(a)(3) provides that it is unlawful for any *person* to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted … any proceeding under [the FLSA]…." 29 U.S.C. § 215(a)(3) (emphasis added). A person is defined as any "individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." 29 U.S.C. § 203(a).

Thus, although the anti-retaliation provisions of the FLSA are applicable to any *person,* any legal or equitable relief available to the employee must be sought from the *employer*. This Court has already determined that Defendants Bland and Hively are not employers pursuant to the FLSA and H-2A regulations, *see supra* Section III.B.i, so Plaintiffs cannot recover from them under Counts IV and V of their Complaint.

Plaintiffs' argument that Bland and Hively are liable because "they are employers of Supervisor Cruz, as they jointly hired him [and] jointly decide his bonus" is unavailing. Cruz is not a plaintiff in this case and the issue of whether Bland and Hively employ him is irrelevant to the relief sought by Retaliation Plaintiffs.

While the Court expresses no opinion as to the merits of the Retaliation Plaintiffs' claims, the Court can say that any recourse they may have lies exclusively with Defendant Bland Farms. Because the Court finds that Defendants Bland and Hively have no individual liability as purported employers in any of Plaintiffs' claims, their motions for summary judgment are granted, and Bland and Hively are accordingly dismissed from this case.

---

[11] The third Retaliation Plaintiff, Arturo Morales-Morales, was working in the Dominican Republic at the time of Cruz's visit, but attested that Lopez Gomez had previously called him by telephone and told him that "those who had a lawsuit were not going to return to work with the farm." Doc. # 36 at 3.

## C. Pre-Employment (*Arriaga*) Expenses

If an expense incurred by an H-2A worker is determined to be "primarily for the benefit of the employer," the employer must reimburse the employee during the first workweek in which the expense arose up to the amount needed to comply with the federal minimum wage laws. *Arriaga*, 305 F.3d at 1237. If an employer pays an hourly wage higher than the FLSA minimum, it may not be required to reimburse the employee for expenses at all (i.e., if the resulting pay ([actual wage x hours worked] + wage credits) is higher than the FLSA lodestar ([minimum wage x hours worked] + expenses)). *Morales-Arcadio*, 2007 WL 2106188, at *2.

The Eleventh Circuit uses a two-part test for determining whether costs were for the benefit of the employer and thus should have been reimbursed where wages are brought below minimum: (1) whether the employment related cost is a personal expense that would arise as a normal living expense, and (2) whether the cost is "incident of and necessary to the employment." *Arriaga*, 305 F.3d *at* 1241-43. If the cost is not a normal living expense and was necessary for employment, then the cost is incurred for the employer's benefit and should be reimbursed if wages are brought below the FLSA minimum. *Id.* at 1244. Expenses normally deemed "primarily for the benefit of the employer" ("*Arriaga* expenses") may include transportation costs from the worker's home country to the place of employment, visa costs, visa application fees, and immigration fees for entry documents. *Id.* at 1242, 1244.

To establish *Arriaga* first-week liability for the 2002 through 2005 seasons, Plaintiffs must show (1) the first pay period gross pay actually received; (2) the first pay period hours actually worked; (3) the expenses "primarily for the benefit of the employer" incurred; and (4) other valid FLSA "wages"

received during the first pay period and not deducted from the gross pay.[12] *Morales-Arcadio*, 2007 WL 2106188, at *15.

Here, Plaintiffs seek reimbursement for the following pre-employment expenses:

(1) Transportation costs from their hometowns to Monterrey, Mexico;

(2) Lodging costs incurred in Monterrey;[13]

(3) Immigration fees (excluding passport expenses);[14]

(4) Passport expenses; and

(5) Recruitment and processing fees.

The Court will address Defendant Bland Farms' liability for passport expenses and recruitment and processing fees separately since these expenses need additional discussion. The disposition of the remaining expenses is addressed first in the following section.

### i. Transportation, Hotel, and Immigration Expenses (Excluding Passport)

There is no dispute that expenses incurred for transportation, lodging,[15] and immigration

---

[12] Wages paid include the "reasonable cost ... to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees." 29 U.S.C. § 203(m).

[13] Plaintiffs suggest that they were required to stay overnight at hotels in Monterrey while awaiting their visa interviews at the U.S. Consulate and the receipt of their visas. Doc. # 119 at 14

[14] Plaintiffs allegedly incurred immigration expenses for their H-2A visa, visa reciprocity fee ("Banamex"), and their I-94 (Arrival-Departure Record). Doc. # 119 at 13-14.

[15] Lodging expenses incurred while awaiting visa processing was not specifically addressed in *Arriaga*. The plaintiffs in *Ramos-Barrientos* were denied reimbursement for lodging expenses because their claim was "unduly delayed and prejudicial to

expenses (aside from passport expenses) are *Arriaga* expenses that may require reimbursement depending on the hourly wage actually paid to Plaintiffs in the first workweek. *See Arriaga*, 305 F.3d at 1243 (holding that transportation costs are "incident of and necessary to the employment" of H-2A workers); *id.* at 1244 (holding that visa costs, visa application fees, and immigration fee for entry documents were necessitated by employment of the laborers under the H-2A program). Rather, Plaintiffs urge that the amounts of *Arriaga* expenses are undisputed and that the Court "should enter liability" against Bland Farms "[b]ecause the wages Plaintiffs received were less than the Plaintiffs' paystub hours times the federal minimum wage plus expenses." Doc. # 157 at 7. Plaintiffs suggest that, at trial, they "will offer evidence of the actual hours worked ... to determine their damages owed." *Id.*

Plaintiffs are getting ahead of themselves. There are material questions of fact on both sides of the FLSA liability equation that preclude summary judgment. First, the "resulting pay" is indeterminable because Bland Farms is entitled to a § 203(m) wage credit for the value of housing afforded to Plaintiffs,[16] and, as Plaintiffs note, the actual hours worked by Plaintiffs still needs the Court's consideration at trial. Second, the value of the "FLSA Lodestar" cannot be computed because Bland Farms has created a factual dispute as to the amount (and

existence) of certain pre-employment expenses for which Plaintiffs claim a right to reimbursement.

This factual dispute arises from the reimbursement forms and waivers completed by Plaintiffs near the beginning of their employment with Bland Farms. Upon payment of the first week wages, Defendant provided reimbursement forms for Plaintiffs to review and sign regarding the amount of pre-employment expenses they incurred prior to coming to Bland Farms. Doc. # 153 at 5 (Bouwense affidavit). Bland Farms reimbursed Plaintiffs the amount of expenses disclosed and followed the reimbursement with a waiver form. *Id.* The waiver form summarized the disclosed expenses and asked H-2A employees to certify that no additional expenses or fees were incurred. *Id.*

Construing these forms in a light most favorable Defendant, a reasonable trier of fact could conclude that Plaintiffs did not incur any pre-employment expenses aside from those that were already disclosed. Plaintiffs' argument that these forms are inadmissible is incorrect. While the Court agrees that Plaintiffs cannot validly waive their FLSA claims, *see infra* Section III.F., the reimbursement and waiver forms are admissible as an admission by a party opponent. *See* F.R.Evid. 801(d)(2)(B) ("A statement is not hearsay if ... the statement is offered against a party and is a statement of which the party has manifested an adoption or belief in its truth.").

Bland Farms also disputes Plaintiffs' credibility, contending that their testimony is often "contradicted by [their own] interrogatory responses, and is, at best, speculation as to the amount of a bus ticket or fee that was incurred, in some instances, over four years ago." *See* doc. # 192 at 5-6 (citing doc. # 191-3, in which Plaintiff Florencio Cortez-Gonzalez states that he spent

---

[d]efendants if considered." *Ramos-Barrientos*, No. 606CV089, doc. # 250 at 6 n.6. Plaintiffs assert a timely claim here, and the Court finds that such expenses are not normal living expenses and were incident and necessary to employment with Bland Farms.

[16] See *infra* section IV for the Court's discussion of Defendant Bland Farms' entitlement to a § 203(m) wage credit for the value of housing afforded to Plaintiffs.

"approximately 500 to 600 pesos" for travel from Mexico City to Monterrey"). Bland Farms points out that Plaintiffs' testimonies are riddled with qualifying terms such as "between," "around," or "approximately." *Id.* at 7. Defendant also notes that "[e]ven where some Plaintiffs have managed to testify without the use of ambiguous terms, there are few, if any, receipts for these charges." *Id.*

"Doubts as to the credibility of the movant's affiants or witnesses may lead the court to conclude that a genuine issue exists." 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2726 (3d ed. 2010); *see* F.R.Civ.P. 56(e) advisory committee note to 1963 amendment ("Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate."). Thus, if the credibility of witnesses "is challenged by the [non-moving] party and specific bases for possible impeachment are shown, summary judgment should be denied and the case allowed to proceed to trial...." 10A FEDERAL PRACTICE AND PROCEDURE § 2726.

Here, Bland Farms has offered little in the way of impeachment of Plaintiffs' testimony. Instead, Defendant generally argues that Plaintiffs' testimony is too speculative to be reliable. While merely disputing facts based on information and belief is normally insufficient to survive summary judgment, the Court nonetheless believes that the credibility of Plaintiffs' testimony may indeed be an issue. Many of the facts asserted by Plaintiffs lie "exclusively within their control" and are "incapable of being effectively controverted" by Bland Farms. *Id.* Because there is little documentation of the amounts paid for transportation and lodging, the amounts are more or less contrived from Plaintiffs' recollections.

As such, Defendant Bland Farms should be afforded the chance to test the credibility of Plaintiffs' testimony at trial. Summary judgment is accordingly denied as to Plaintiffs' claims for reimbursement of the expenses pertinent to this section.

### ii. Immigration Expenses (Passport)

The parties agree that Plaintiffs had to have a valid passport to obtain the visa necessary for employment with Bland Farms. Doc. # 157 at 5. This Court previously held that "[o]btaining a passport is not a normal living expense for immigrant-laborers; rather it is a necessity for the employment as immigrant-laborers." *Morales-Arcadio*, 2007 WL 2106188, at *17.

The DOL, however, has recently stated that expenses incurred to obtain a passport are primarily for the benefit of the employee and thus non-*Arriaga* expenses. *See* U.S. Dept. of Labor, Field Assistance Bulletin No. 2009-2, at 12, *available at* http://www.dol.gov/whd/FieldBulletins/Field AssistanceBulletin2009_2.htm (8/21/09) ("[O]btaining a passport and incurring any related costs are for the primary benefit of the employee as the employee may use the passport for purposes other than employment.").

Although the DOL's opinions are not necessarily binding on this Court, it does find the August 2009 bulletin to be persuasive. *See Skidmore v. Swift*, 323 U.S. 134, 140 (1944) ("[R]ulings, interpretations, and opinions of the Administrator under [the FLSA], while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.")

11

While this Court was previously correct in that the expenses associated with acquiring a passport are not normal living expenses and a necessity for H-2A employment, it must acknowledge that passports obtained by H-2A workers can also be used to obtain work with other employers. For this reason, the Court cannot say that the obtaining of passports in this case was solely for the benefit of Bland Farms. This is especially true in light of the fact that some Plaintiffs purchased five-year passports instead of passports valid for a single year. The Court therefore holds that passports obtained by Plaintiffs were primarily for their own benefit, and amounts incurred in obtaining them are not reimbursable as a matter of law.

### iii. Recruitment and Processing Fees

As mentioned above, from the Spring harvest season of 2002 to the Spring harvest season of 2007, Bland Farms contracted with ILMC to assist Bland Farms in obtaining agricultural clearance orders for H-2A workers. Doc. # 146 at 5. ILMC subcontracted to CSI, which contacted workers, completed and submitted visa applications, and shepherded workers through the consulate process. Doc. #197-13 at 2. Defendant does not appear to dispute that Plaintiffs paid a fee to CSI for services rendered in Mexico. The issue is whether Bland Farms authorized ILMC (and in turn CSI) to collect recruitment and processing fees from Plaintiffs.

In *Arriaga*, The Eleventh Circuit left open the issue of whether recruitment expenses are "primarily for the benefit of the employer," but held that agency principles must create employer liability for the recruiter's actions. 305 F.3d at 1244-45; *see id.* at 1245 n.4 ("Nothing in the FLSA seeks to displace the principles of agency law."). "[T]he line is drawn based on whether the employment-

related cost is a personal expense that would arise as a normal living expense." *Id.* at 1243.

This Court has previously ruled that recruitment fees do not arise as a normal living expense, and, therefore, "an employer must timely reimburse pre-employment recruiting expenses where the recruiters are agents of the employer with *actual* or *apparent* authority to charge recruiting fees." *Morales-Arcadio,* 2007 WL 2106188, at *14 (emphasis added).

Bland Farms argues that ILMC and CSI had neither actual nor apparent authority to charge Plaintiffs recruitment and processing fees in Mexico. Defendant successfully made the same argument in *Ramos-Barrientos* and was granted summary judgment on the issue:

> Here, as was the case in *Arriaga*, there is no evidence that Defendants authorized ILMC, MOA, or CSI to collect processing and recruiting fees. There is also no evidence that Defendants, by word or conduct, said or did anything to cause any H-2A worker to believe that ILMC, MOA, or CSI were authorized to collect such fees.

*Ramos-Barrientos,* No. 606CV089, doc. #229 at 12.

The question the Court must now answer is whether Plaintiffs here have introduced any evidence not previously considered in *Ramos-Barrientos* upon which a reasonable juror could conclude that Bland Farms authorized the collection of recruitment and processing fees. This Court find that Plaintiffs failed to do so.

First, Bland Farms did not actually authorize ILMC (and in turn CSI) to collect recruitment and processing fees from Plaintiffs and other H-2A employees. "[A]ctual authority can only be created by

written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him to act on the principal's account." *Cont'l Cas. Co. v. Holmes*, 266 F.2d 269, 278 (5th Cir. 1959)[17] (internal quotations omitted); *see* RESTATEMENT (THIRD) OF AGENCY § 3.01 ("Actual authority ... is created by a principal's manifestation to an agent that, as reasonably understood by the agent, expresses the principal's assent that the agent take action on the principal's behalf."). An agent thus acts "with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." RESTATEMENT (THIRD) OF AGENCY § 2.01.

Bland Farms advised ILMC early on that it had no need for ILMC's Mexican recruitment services because Bland Farms had its own "well-developed list of approximately 800 previously recruited H-2A workers." Doc. # 127-5 at 2 (Bouwense affidavit to *Ramos-Barrientos* filed as exhibit to Bouwense deposition). Bland Farms also sought assurance from ILMC that prospective H-2A employees would not be charged recruitment and processing fees. *See* doc. # 152 at 2 (Clarke Yearous declaration). In an August 2001 meeting, Clarke Yearous[18] asked Lee Wicker "several times if there would be any 'under-the-table' charges the workers and every time [Wicker] assured [him] there would be no extra charge." *Id.* Wicker likewise assured Yearous that there would be "no hidden fees that Bland Farms would have

to pick up and ... no unethical or unforeseen charges to [their] workers."[19] *Id.*

Plaintiffs' argument that ILMC's undisputed authority to "prepare and process forms and documents pursuant to applicable laws and [H-2A] regulations" included the authority to charge recruitment and processing fees is unconvincing. Doc. # 197 at 28. CSI's collection of fees exceeded the scope of authority provided to ILMC by Bland Farms. There is simply no evidence that Bland Farms actually authorized the collection of recruitment and processing fees.

Second, ILMC and CSI lacked apparent authority from Bland Farms to collect recruitment and processing fees. "[A]pparent authority is 'created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him.'" *Arriaga*, 305 F.3d at 1245 (quoting Restatement (Second) of Agency § 27 (1958)). "In a case involving a federal statute that is silent as to the applicability of agency law, the Supreme Court has stated that the 'apparent authority theory has long been the settled rule in the federal system.'" *Id.* at 1244-45 (citing *Am. Soc'y of Mech. Eng'rs, Inc. v. Hydrolevel Corp.*, 456 U.S. 556 (1982)).

---

[17] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit decided prior to October 1, 1981.

[18] Clarke Yearous served as Chief Operation Officer for Bland Farms from 2001 until 2002. Doc. # 152 at 1.

[19] Plaintiffs filed a declaration by Lee Wicker, in which he states that he "knew and disclosed that workers paid a fee for application support and consular services to MOA/CSI." Doc. # 197-13 at 3. He continues, stating that he "was never in a position to promise clients that there would be no such fee." *Id.* Even accepting this declaration as true, it is still not evidence that Bland Farms (or one of its employees) manifested its assent to CSI's collection of recruiting and processing fees. It is likewise not evidence that Lee Wicker *actually* informed a representative of Bland Farms that recruitment and processing fees would be charged, but rather a statement of Wicker's customary practice.

Here, Plaintiffs focused their efforts on establishing CSI's actual authority to collect recruitment and processing fees. *See* doc. # 227 at 15 n.6 ("Apparent authority is not at issue here because Defendants' agents had actual authority for processing H-2A workers' immigration paperwork."). Plaintiffs, therefore, have presented no evidence that Bland Farms said or did anything that caused Plaintiffs or other H-2A workers to believe that Defendant authorized the collection of recruitment and processing fees.

With the aforementioned in mind, Defendant Bland Farms' motion for partial summary judgment is granted as to Plaintiffs' FLSA and contractual claims for reimbursement of recruitment and processing fees.[20]

### iv. Contractual Liability for Pre-Employment Expenses

Among the contract terms offered and accepted was that "the employer shall pay the worker at least the adverse effective wage rate in effect at the time the work is performed, the prevailing hourly rate, or the legal federal or State minimum wage, whichever is highest, for every hour or portion thereof worked during a pay period." Doc. # 157 at 9. The clearance orders also promised compliance with "with applicable federal, state, and local employment-related law and regulations." *Id.*

Plaintiffs ask for judgment of liability on Count VI of their Complaint, which alleges that Defendants breached Plaintiffs' employment contracts by failing to pay at least the FLSA minimum wage in the first

workweek. *Id.* Plaintiffs anticipate recovering in contract under Count VI for the years in which they will be time-barred from recovery under the FLSA's statute of limitations. *Id.*

Summary judgment on Count VI is denied for the same reasons set forth in Section III.C.i. Because this claim is fundamentally the state law of equivalent of Plaintiffs' demand for reimbursement of *Arriaga* expenses under Count I, summary judgment is simply inappropriate given the factual uncertainties surrounding the amounts incurred by Plaintiffs for pre-employment expenses, and whether Bland Farms paid sufficient wages for the first workweek, obviating the very need for reimbursement.

### D. Accuracy of Payroll Records

The FLSA obligates every employer to "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him...."[21] 29 U.S.C. § 211(c). H-2A regulations have a comparable requirement:

> The employer must keep accurate and adequate records with respect to the workers' earnings, including but not limited to field tally records, supporting summary payroll records, and records showing the nature and amount of the work performed; the number of hours of work offered each day by the employer; ... the hours actually worked each day by the worker; the time the worker

---

[20] Plaintiffs' also claim reimbursement for a $40 processing fee charged by a local agent to process immigration papers from Fall 2007 through Fall 2008 (after Bland Farms ended its relationship with ILMC). Doc. # 197 at 28. Defendants, however, "promptly reimbursed ... the workers involved." Doc. # 216 at 8 n.2.

[21] There is no private right of action under the FLSA's record-keeping provision. Plaintiffs argue that because "Defendants promised 'to comply with applicable federal, state, and local employment-related laws and regulations,' failing to comply with the FLSA record-keeping provision is also a breach of the employment contract." Doc. # 157 at 11.

began and ended each workday; the rate of pay (both piece rate and hourly, if applicable); the worker's earnings per pay period; … and the amount of and reasons for any and all deductions taken from the worker's wages.

20 C.F.R. § 655.122(j)(1).

The Court recently touched on evidentiary issues pertaining to Plaintiffs' claims for inaccurate payroll records. *See* doc. # 248 (Order addressing the parties' motions *in limine* to exclude expert testimony). Defendants moved *in limine* to exclude the expert opinion of Mr. Jorge J. Rivero, who was retained to opine on "the veracity of Defendants' time records during the 2004 through 2008 planting and harvest seasons." Doc. #248 at 1. Rivero "examined and analyzed a sample of Bland Farms' field tally sheets, pay stubs, and payroll summaries comprised of time records for a particular weekday." *Id.* at 2. "Based on his observations of this sample, Mr. Rivero noticed [a] wide variation in the number of hours worked by the employees in the [same] crew," which has "long been recognized … as an indicator of inaccurate of false records." *Id.* (internal quotations omitted).

Dr. Mary Dunn Baker was retained by Defendants to dispute the statistical soundness of Rivero's analysis and expert report. *Id.* at 1. Baker concluded that "the data that Mr. Rivero presents to illustrate wide variation in hours worked by field crew employees cannot even be reliably used to determine whether, across the relevant time frame, there is a variation in hours worked.…" *Id.* at 3.

The Court allowed Baker's testimony, noting that while Plaintiffs "may certainly disagree with the methodology used by Dr. Baker," that "disagreement does nothing to undermine the reliability of her testimony."

*Id.* at 4. The Court also allowed portions of Rivero's report and testimony,[22] recognizing that "it will likely assist the Court in understanding any inaccuracies in Defendants' time records and payroll information." *Id.* at 4.

The Court's decision to admit the expert opinions of Rivero and Baker already reveals a material factual question in Plaintiffs' claims for inaccurate payroll records. Plaintiffs, nonetheless, insist that partial summary judgment is proper because "there is substantial, undisputed evidence that Defendants failed to make, keep, and preserve accurate records of the hours worked by the Plaintiffs despite their duty to do so." Doc. # 157 at 11. This Court disagrees.

Plaintiffs point out that Defendant's supervisors "did not record compensable waiting time as work time, did not record the actual time workers ended work, did not record actual break times, automatically deducted one hour for all piece rate workers regardless of the amount of break time actually taken, and sometimes failed to record any hours for piece rate workers." *Id.* The FLSA and H-2A regulations require "adequate and accurate" records – not perfect records. Although anomalies in Defendant's payroll records are certainly a concern, they do not irrefutably prove that Bland Farms maintained records so inadequately that it was in violation of the FLSA and H-2A regulations.

Regardless, Bland Farms has pointed to contradictory testimony, which reveals an ongoing factual dispute as to Plaintiffs' claims

---

[22] The Court, however, excluded Mr. Rivero's testimony as it related to his analysis of deposition testimony and his phone conversations with selected H-2A employees. Doc. # 248 at 2. The Court likewise excluded his opinion as to the best available information to reconstruct actual hours worked by Plaintiffs. *Id.*

for inaccurate payroll records. Doc. # 192 at 10-13. For instance, one of the named Plaintiffs testified that there were no delays in the start times for work in the fields, and there were likewise no delays between the time work was finished and the time when the buses left the fields. *See* doc. # 129 at 128-129 at (Alfonso Guerrero-Hernandez Deposition). Nahum Ornelas, a field supervisor with Bland Farms, testified that all workers take an hour for lunch. *See* doc. # 124-1 at 17 (Ornelas deposition). Ornelas noted the confusion in recording times taken for lunch, recalling that workers "could take 30 minutes [at noon] and eat half of [their] lunch, and probably around 3:00 … [they are] going to take another 30, 35 minutes." *Id.* at 13.

It is thus evident that a number of factual uncertainties preclude this Court from saying that Bland Farms' payroll records were inaccurate as a matter of law.

### E. Statute of Limitations

#### i. FLSA Wage and Hour

The ordinary statute of limitations for cases brought under the FLSA is two years, but a cause of action arising out of a willful violation of the FLSA may be commenced within three years after the cause of action accrued. 29 U.S.C § 255(a). To establish willfulness, Plaintiffs must show that an employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133 (1988). If an employer acts unreasonably but not recklessly in determining its legal obligation under the FLSA, then its actions should not be considered willful, and the two-year statute of limitations should be applied. *Lockaby v. Top*

*Source Oil Analysis, Inc.,* 998 F. Supp. 1469, 1471 (N.D. Ga. 1998).[23]

Plaintiffs ask the Court to find Bland Farms' alleged violations of the FLSA willful as a matter of law based on the facts in the record. Specifically, they contend that Bland Farms was "on notice of their FLSA obligations because they have defended themselves against at least six lawsuits or claims over the last sixteen years brought on behalf of migrant farm workers in Defendants' employ, including one lawsuit brought by the DOL." Doc. # 157 at 20. Bland Farms, meanwhile, points out that "of the serial claims that Georgia Legal Services have brought against them, … there has not been a single finding of an FLSA violation." Doc. # 192 at 14. Defendant urges that "[t]he mere fact that an unsuccessful claim is brought against a company does not establish knowledge or a reckless disregard for the matter of whether the company's practices violate the FLSA," and "[t]he correct question is whether Defendants knew or exhibited a reckless disregard for the matter of whether they *violated* the FLSA." *Id.*

The Court, however, need not address the willfulness issue today because Plaintiffs failed to meet the summary judgment standard for any FLSA violation. *See Allen v. Bd. of Public Ed.,* 495 F.3d 1306, 1324 (11th Cir. 2007) (concluding that because "triable issues

---

[23] The Eleventh Circuit has hinted that willfulness is properly decided by a jury where questions of fact exist. *See Alvarez Perez,* 515 F.3d at 1163 n.3 ("We have been unable to find an FLSA decision of this Court squarely holding that the decision about whether the employer acted willfully for purposes of determining the statute of limitations period is to be decided by the jury. In the district court, the court and the parties assumed that the jury was to decide willfulness, and the parties have assumed that in their briefs and arguments to us. So, we assume it too.")

of fact remain[ed] as to some of [the p]laintiffs' claims that they worked overtime without compensation ... a determination of which statute of limitations to apply must be reserved until it is determined whether a violation of the FLSA occurred"). The Court will resolve the issue of willfulness, and thus the appropriate statute of limitations, at trial if it is determined that Bland Farms did indeed violate the FLSA.

### ii.  Contractual Claims

In *Morales-Arcadio*, this Court held that the six-year statute of limitations for simple contracts, provided by O.C.G.A. § 9-3-24, applies to claims alleging violations of the terms of an H-2A clearance order. 2006 WL 140590, at *4. Bland Farms proposes that the more limited two-year statute of limitations for recovery of wages, provided by O.C.G.A. § 9-3-22, is the more suitable limitations period. Doc. # 146 at 3 n.2. The Court, however, addressed this issue in *Ramos-Barrientos* and reaffirmed the position taken in *Morales-Arcadio*:

> The Court, however, is still of the opinion that regulations governing the H-2A program expressly state that the job clearance order creates a contract between the employer and employer, invoking the six-year statute of limitations specified in O.C.G.A. § 9-3-24. Since this Court's decision in *Morales-Arcadio*, three other Georgia district courts have had occasion to consider the same statute of limitations issue. Two of these courts agreed that the six year statute of limitations applies. *See Arriaga-Zacarias v. Lewis Taylor Farms, Inc.*, 452 F.Supp.2d. 1282 (M.D. Ga. 2006); *Escolastico De Leon-Granados v. Eller and Sons Trees, Inc.*, 452 F. Supp. 2d 1282 (N.D. Ga. 2006). *But see Antonio-*

> *Candelaria v. Gibbs Farms, Inc.* 2008 WL 623611 (M.D. Ga. 2008) (adopting the two-year statute of limitations). Because *Antonio-Candelaria* is not binding on this Court, the Court has no desire to revisit its own well-reasoned decision in *Morales-Arcadio*.

*Ramos-Barrientos,* No. 606CV089, doc. # 229 at 15.

Bland Farms noted the Court's decision in *Ramos-Barrientos* and has respectfully withdrawn its argument on this issue. Doc. # 216 at 4. Defendant's motion for partial summary judgment is therefore denied on this matter, and the six year statute of limitations will apply to Plaintiffs' claims for breach of contract.

### F.  Doctrines of Laches and Estoppel

In Defendant's Answer to Plaintiffs' Second Amended Complaint, Bland Farms asserts a defense that "Plaintiffs' claims are barred by the doctrines of estoppel and/or laches, inasmuch as Plaintiffs reported to Bland Defendants that they had been correctly and fully paid for work performed in accordance with federal law and the understanding of the parties to the contract." Doc. # 137 at 2. Plaintiffs rightfully question the viability of Bland Farms' defense and ask for judgment in their favor.

As noted earlier, Bland Farms provided reimbursement forms for Plaintiffs to review and sign, detailing the amounts of travel related expenses incurred in coming to Bland Farms. Doc. # 153 at 5. Defendant reimbursed Plaintiffs for the amount of expenses disclosed and asked them to certify that no additional expenses or fees were incurred. *Id.* The issue that the Court must address is whether Plaintiffs effectively waived their rights to recover for undisclosed

pre-employment expenses. The Court finds that they did not.

The defenses of laches and estoppel are normally not available in FLSA actions. Laches is an unavailable defense, so long as the FLSA claim is brought within the applicable statute of limitations. *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946). Moreover, workers' rights established by the FLSA cannot be waived, released, or compromised. *Reich v. Stewart*, 121 F.3d 400, 407 (8th Cir. 1997); *see Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350 (11th Cir. 1983) ("FLSA rights cannot be abridged by contract or otherwise waived.") (internal quotations omitted).

The doctrine of estoppel, by contrast, is a recognized defense under certain narrow circumstances. *See Gonzalez v. Spears Holdings, Inc.*, 2009 WL 2391233, at *3 (S.D. Fla. 2009) ("Estoppel can be a valid defense to an FLSA claim where the party asserting estoppel is not seeking to entirely preclude the opposing party from bringing its FLSA claim."). Plaintiffs have cited to authority for the proposition that a plaintiff can only be estopped from charging an employer with failure to pay wages where the employer is unaware that the employee was under-reporting hours, and the employee willfully chose to under-report hours. *See Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324 (5th Cir. 1972).

Bland Farms argues that the facts surrounding Plaintiffs' review and certification of the reimbursement and waiver forms conform to the exception carved out by *Brumbelow*. *See* doc. # 192 at 19-20. The Court disagrees. The Fifth Circuit noted that "[o]n the narrow facts of [*Brumbelow*], the [lower] court correctly granted a directed verdict on the basis that the [plaintiff] was estopped and could not profit from her own wrong in furnishing false data to the

employer." 462 F.2d at 1327. In *Brumbelow,* there was clear evidence that the plaintiff was willingly giving false information because she was unable to perform up to the employer's standards. *Id.* That is not the case here. While it is unknown why Plaintiffs chose not to disclose any additional pre-employment expenses when asked by Bland Farms, there is no evidence that they willfully concealed these expenses, as is required by *Brumbelow*.

Thus, in these circumstances, the Court proceeds with caution and falls back on the general rule that an estoppel defense is not available in FLSA actions. This comports with the policy that "FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." *Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 740 (1981).

Plaintiffs are therefore correct in that Defendant Bland Farms cannot maintain a defense based on the doctrines laches or estoppel. The Court accordingly grants Plaintiffs judgment on this issue.

## IV. SECTION 203(m) WAGE CREDIT[24]

Neither party has specifically moved this Court to address Defendant's entitlement to a § 203(m) wage credit for housing furnished to Plaintiffs while employed at Bland Farms. Bland Farms raised the issue of a § 203(m) credit only to indicate a factual dispute as to Plaintiffs' claim for first week wages. Doc. # 192 at 4. The Court, however, is compelled to address this issue given its significance in the FLSA liability calculation.

Plaintiffs contend that while "Defendants may attempt to claim a wage credit for

---

[24] For a more detailed analysis of the § 203(m) wage credit issue, see *Ramos-Barrientos.*, No. 606CV089, doc. # 250 at 3-4.

providing housing, they cannot because the plain language of the H-2A regulation at 20 C.F.R. § [655.122(d)(1)] requires that employers provide housing 'without charge to the worker.'" Doc. # 157 at 3 n.1. Plaintiffs urge that, "an employer cannot claim a § 203(m) wage credit for the value of housing provided when there is an agreement that prevents the employer from charging for housing." *Id.* (citing *Marshall v. Glassboro Serv. Ass'n, Inc.*, 1979 WL 1989 (D.N.J. 10/19/79)). Plaintiffs' argument is essentially that Bland Farms will run afoul of H-2A regulations if they are permitted to take a § 203(m) wage credit for the reasonable cost of housing that is otherwise afforded to H-2A employees free of charge.

The Court disagrees. First, Plaintiffs argument convolutes the distinct requirements that employers must adhere to under the FLSA and under the DOL's H-2A program. While H-2A regulations require employers to provide "housing at no cost" to H-2A employees, 20 C.F.R. § 655.122(d)(1), the FLSA has no such requirement and indeed permits employers to include in wages paid the reasonable cost[25] of "customarily furnished" board, lodging, or other facilities. *See* 29 U.S.C. § 203(m). Bland Farms complied with H-2A regulations when they provided free housing to Plaintiffs and other H-2A employees. Defendant does not violate those regulations by simply taking a § 203(m) wage credit for the reasonable cost of housing provided to their employees – something that the FLSA permits it to do.

Second, the defendant in *Marshall* was precluded from taking a § 203(m) credit

because a collective-bargaining agreement required the defendant to provide lodging at no cost to the worker. 1979 WL 1989, at *3. The court reasoned that "[t]o allow the employer a wage credit for facilities excluded from wages … is to result in the employee receiving less than the minimum wage." *Id.* The wage credit "would necessarily violate the terms of [§ 203(m)] which forbids the inclusion as part of the minimum wage paid to any employee, the cost of board, lodging or other facilities which have been … excluded from wages under the terms of a *collective bargaining agreement*." *Id.* (emphasis added).

Plaintiffs discount the fact that *Marshall* involved a collective-bargaining agreement, but that distinction is of paramount importance and distinguishes that case from the one here. This is because § 203(m) provides that "the cost of board, lodging, or other facilities shall not be included as a part of the wage paid to any employee to the extent it is excluded therefrom under the terms of a bona fide *collective-bargaining agreement* applicable to the particular employee…." 29 U.S.C. § 203(m) (emphasis added). Plaintiffs implicitly invite the Court to read an additional exclusion into § 203(m) for contractual terms wherein an employer agrees to provide housing without charge. The textual canon of *expressio unius est exclusio alterius* persuades the Court to refrain from doing so. *See Fla. Right to Life, Inc. v. Lamar*, 273 F.3d 1318, 1327 (11th Cir. 2001) (recognizing the interpretive canon of *expressio unius est exclusio alterius*, which provides that "the expression of one thing implies the exclusion of another"). Had Congress intended the result suggested by Plaintiffs, it would not have limited the exclusion to housing and facilities made available via a collective-bargaining agreement.

---

[25] "[T]he 'reasonable cost' to the employer of furnishing the employee with board, lodging, or other facilities (including housing) is the cost of operation and maintenance…. [I]f the total so computed is more than the fair rental …, the fair rental value … shall be the reasonable cost." 29 C.F.R. § 531.3(c).

Because housing is "customarily furnished" and indeed required by H-2A regulations, Bland Farms is entitled to a § 203(m) wage credit for the reasonable cost of housing provided to Plaintiffs and other H-2A employees. Defendant does not breach the terms of the H-2A clearance orders by claiming the § 203(m) wage credit provided to them by the FLSA.

The only question that remains is the amount of § 203(m) wage credit that Bland Farms may claim. Defendant previously filed the expert witness report of Jack Gibson, in which Gibson opined on the fair rental value of the housing afforded to Plaintiffs. Doc. # 95. Plaintiffs' moved *in limine* to exclude Gibson's report, contending that Bland Farms failed to disclose Gibson by the deadline for disclosure of expert witnesses. Doc. # 154. Bland Farms, believing it could establish fair rental value through the testimony of fact witnesses, notified the Court that it no longer intended to use Gibson as a testifying expert. Doc. # 179. The Court accordingly denied Plaintiffs' motion *in limine* as moot. Doc. # 239.

Bland Farms now asks the Court to admit Gibson's expert witness report for trial, after it provides Plaintiffs the opportunity to depose him. Doc. # 236 at 2. This was the same treatment given to Gibson's expert report and testimony in *Ramos-Barrientos*.[26] Rather than

---

[26] "While the Defendants here have not willfully disobeyed the Court's discovery order, the Court recognizes that Plaintiffs would be prejudiced if they are not provided an opportunity to conduct discovery with respect to Mr. Gibson's new opinion. The Court thus strikes the affidavit from consideration when ruling on Defendants' motion for summary judgment.

However, because establishing the cost of housing may be necessary for this case to advance, the Court will permit Defendants to enter Mr. Gibson's new affidavit into evidence after they provide Plaintiffs with an opportunity to depose Mr. Gibson." *Ramos-Barrientos.*, No. 606CV089, doc. #229 at 3.

piecing together the fair rental value of the housing afforded to Plaintiffs using Bland Farms' accounting records and attending to Plaintiffs' numerous objections to Therese Bouwense's calculation of the § 203(m) credit, *see* doc. # 244 at 2-5, the Court will admit the expert witness report of Mr. Gibson, subject to Bland Farms having Gibson available for deposition.[27] Although the Court expresses its displeasure with Defendant's decision to withdraw and later revive Gibson's expert report and testimony, the Court is convinced that this is the best way to proceed.

## V. CONCLUSION

For the foregoing reasons Defendants Michael Hively's and Delbert Bland's motions for summary judgment are **GRANTED**. Doc. ## 143, 144. The Court holds that Bland and Hively have no individual liability for any of Plaintiffs' claims and are accordingly **DISMISSED** from this case. Defendant Bland Farms' motion for partial summary judgment is **GRANTED** in part and **DENIED** in part. Doc. # 145. Bland Farms' motion is granted as to any liability for the payment of recruitment and processing fees, and its motion is denied as to the statute of limitations for Plaintiffs' breach of contract claims.

Plaintiffs' motion for summary judgment is likewise **GRANTED** in part and **DENIED** in part. Doc. # 156. Their motion is granted as to Defendant's defense based on laches and estoppel. The remainder of their motion is denied.

Plaintiffs' claims for reimbursement for passport expenses and for recruitment and processing fees fail as a matter of law.

---

[27] The Court holds that Mr. Gibson's testimony is relevant and sufficiently reliable under F.R.Evid 702 and *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993).

Defendant Bland Farms is entitled to a §
203(m) wage credit for the value of housing
afforded to Plaintiffs. Bland Farms is
***ORDERED*** to have their real property
appraisal expert, Jack Gibson, readily
available for deposition if Plaintiffs opt to
depose him.

No motions for reconsideration will be
considered prior to trial.

Lastly, the parties are ***ORDERED*** to meet
and file a joint pretrial order no later than
September 17, 2010. A pretrial conference
will be held on September 27, 2010, at 10:00
a.m., in either Savannah or Statesboro. For
the convenience of the Court and parties, the
undersigned will specify the location of the
pretrial conference at a later date.

This day of 18 August 2010

B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA