UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

DAVID OJEDA SANCHEZ, et al.,

Plaintiffs,

v.                    6:08-cv-96

BLAND FARMS, LLC,

Defendant.

# ORDER

## I. INTRODUCTION

Plaintiffs are Mexican farm workers, who are legally working in the United States pursuant to Defendant Bland Farms's ("Defendant") H-2A guest worker program. Defendant runs a large onion planting and harvesting operation. Plaintiffs assert several claims against Defendant for violations of the Fair Labor Standards Act ("FLSA"), *see* 29 U.S.C. § 201 *et seq*, and for breach of contract. *See* Doc. 119.

A bench trial was held, and the Court makes the following findings of fact and conclusions of law. *See* FED. R. CIV. P. 52(a) (requiring the court to separately set out its findings of fact and conclusions of law).

## II. FACTS

The employment relationships between Plaintiffs and Defendant are governed by the H-2A program requirements, and the terms set forth in job clearance orders that Defendant filed with the Department of Labor ("DOL") each season. The parties agree that the H-2A clearance orders constitute valid contracts between Plaintiffs and Defendant. *See, e.g.*, Doc. 119, ¶ 22 ("The terms and conditions in the job order become an employment contract between the employer and employee."); and Doc. 137, ¶ 22 (admitting same). *See also Arriaga v. Fla. Pac. Farms, LLC,* 305 F.3d 1228, 1233 n.5 (11th Cir. 2002). These contracts provided for Plaintiffs to be paid on a piece-rate basis that rewarded them for planting or harvesting more onions, but in no event could they be paid less than the adverse effect wage rate ("AEWR"). This rate is prescribed by the DOL to prevent the market wage from falling below that which a domestic employee might expect for a certain type of work.

There are ten clearance orders at issue in this case, all of which provide that Defendant was to pay workers the greater of the AEWR and the federal minimum wage. *See* Doc. 319 at 2; Doc. 320 at 4-5. The evidence established that, in each case, the AEWR was the higher rate. *See* Doc. 320 at 5. In the clearance orders, Defendant also agreed to comply with applicable federal, state, and local employment-related laws and regulations, including the FLSA minimum wage provisions. *See* Doc. 319 at 3.

The operative complaint in this action includes six claims for relief: (1) violation of FLSA minimum wage provisions; (2) breach of contract for failure to pay contract wage; (3) breach of contract for failure to pay travel expenses; (4) violation of FLSA anti-retaliation provisions; (5) violation of contract anti-retaliation provisions; and (6) breach of contract for failure to pay federal minimum wage. *See* Doc. 119.

These claims can be generally categorized as wage claims, travel claims, and retaliation claims. Plaintiffs argue they are entitled to damages in connection with both the planting and harvesting seasons in 2004, 2005, 2006, 2007, and 2008. *See id.*

Before the start of each planting or harvesting season, the workers travel from their hometowns in Mexico to Bland Farms by way of Monterrey. Once they arrive at Bland Farms, the Plaintiffs participate in an orientation session, at which they are required to report any reimbursable expenses for their travel. *See* Def. Ex. Q; Tr. Vol. I at 127; Tr. Vol. IV at 102.

First, Defendant advanced subsistence payments to Plaintiffs at orientation, according to the federally mandated rate, based on two and one half (2.5) days of travel. *See* Tr. Vol. I at 124.

Plaintiffs argue that they traveled for more than 2.5 days in order to reach Bland Farms. *See* Tr. Vol. I at 279-80. The evidence was contradictory on this point. For example, Florencio Cortez Gonzalez testified that the trip took him a total of approximately five days. *See* Tr. Vol. I at 216-17. But Esteban Martinez-Hernandez later testified that he traveled ten hours to Monterrey, and an additional twenty-four hours to Bland Farms. *See* Tr. Vol. II at 25. Even with an overnight stay in Monterrey, this time would not exceed the 2.5 day reimbursement.

No substantive evidence other than the unreliable testimony of a few individuals was presented to corroborate the alleged length of each worker's travel.

Plaintiffs argue that Defendant's staff accountant, Therese Bouwense ("Bouwense") knew some Plaintiffs traveled for more than 2.5 days. *See* Doc. 319 at 19 (citing Tr. Vol. I at 124). But Bouwense's testimony was actually that it took Plaintiffs a maximum of 38 hours, or 1.6 days, to reach Bland Farms from their homes in Mexico, unless they "stopped by and saw somebody they knew on their way to Monterrey, I guess." *See* Tr. Vol. I at 124-25.

In addition, Defendant built in protections to ensure that each worker was given the opportunity to claim all appropriate expenses. At orientation, each worker signed a form, that was available in both English and Spanish, directing the workers to submit receipts for any unaccounted for expenses. *See* Tr. Vol. I at 286, 289; Tr. Vol. II at 56 (Raul Morales-Morales reading in Spanish, the following statement from the document signed by workers: "I expressly affirm that I have reported all my expenses to Bland Farms and that these are the only expenses I have incurred to come to work at Bland Farms."); Tr. Vol. IV at 102-3 (Bouwense testified that the following language was included on reimbursement forms in Spanish and English: "I understand that I have the right to claim additional expenses that I can verify with documentation in my possession.").

Such claims were seldom made. *See e.g.,* Tr. Vol. I at 286, 289 (Javier Guerrero Carrillo testified that he did not present receipts for the additional expenses he claims should have been reimbursed, and acknowledged that the reimbursement receipt that he signed includes language

2

directing him to turn in any supplemental receipts he has from the trip.). But Defendant presented evidence that when proper requests were received, additional compensation was given. *See, e.g.,* Tr. Vol. II at 99 (Crescencio Hernandez-Martinez testified that he complained about compensation twice in 2008, and was given further reimbursement both times).

In addition to the subsistence payments, Plaintiffs sought to prove entitlement to reimbursement for a hotel stay in Monterrey, Mexico. Bouwense testified that Defendant reimburses hotel costs for workers who stay overnight in Monterrey during their trip to Bland Farms. *See* Tr. Vol. I at 126. Before 2007, the immigration processing in Monterrey did not require an overnight stay. *See id.* at 125. When the process changed, requiring two days in Monterrey, the workers began turning in receipts for hotel expenses. *See id.* at 127. Workers were also given the opportunity, as with subsistence pay, to request supplemental hotel reimbursement. *See id.*

Plaintiffs failed to present any receipts establishing the fact and cost of the hotel stays. *Compare* Tr. Vol. I at 237 (Florencio Cortez Gonzalez testified, but presented no documentation, that the hotel cost varied depending on the number of people in the room, but fell within the range of 120 to 150 pesos per worker), *with* Tr. Vol. II at 14, 19-20 (Esteban Martinez-Hernandez testified that hotel costs totaled between 70 and 100 pesos per worker depending on the hotel, and admitted that he never turned in receipts for the years addressed in this lawsuit), and *id.* at 41, 55 (Raul Morales-Morales testified to hotel costs of between 160 and 180 pesos per person, and that he never turned in receipts).

Likewise, Plaintiffs failed to establish that their expenses for bus fare exceeded the amounts Defendant reimbursed. Testimony showed that Defendant gave additional compensation whenever employees presented receipts, but that Plaintiffs rarely claimed any additional bus fare reimbursement. *See* Tr. Vol. I at 119-21.

Aside from the expenses reported at the orientation, Plaintiffs are entitled to payment for the time spent at the orientation session itself. As a rule, Defendant credited Plaintiffs with one hour's pay for orientation each season. *See* Tr. Vol. IV at 122. But testimony showed that Plaintiffs were required to be present for far longer. *See* Tr. Vol. I at 196; Tr. Vol. II at 8, 79. At these sessions, Plaintiffs were required to watch instructional videos, listen to a presentation by the field supervisor, and complete paperwork. *See* Tr. Vol. IV at 122-23. Plaintiffs testified they had to wait long periods of time before they were able to discuss their paperwork with Defendant's staff. *See* Tr. Vol. I at 196; Tr. Vol. II at 8, 79. The Court finds that Plaintiffs were required to report to orientation for an average of two and one half (2.5) hours each season.

During Plaintiffs' time at Bland Farms, Defendant provided housing in several barracks-style dormitories and manufactured homes. *See* Tr. Vol. IV at 38-39. Defendant is entitled to a credit taken against Plaintiffs' compensation for housing, but the parties dispute the value of the housing, and therefore, the amount of the credit.

3

Defendant called Jack Eugene Gibson ("Gibson"), a certified real property appraiser, to testify as to the rental value of these accommodations. *See id.* at 36-59. After assessing a number of comparable properties, Gibson appraised the fair rental value of Defendant's housing at fifty dollars ($50) per week. *See id.* at 46. The primary basis for his valuation was that Defendant's facilities were superior, in quality and location, to a similar barracks-style unit that charged migrant workers thirty five dollars ($35) per week. *See id.* at 41.

Plaintiffs argued that Gibson's estimate was excessive, but did not present a rebuttal expert. Rather, Plaintiffs relied on thin evidence, such as a newspaper ad for rental property, *see id.* at 54-55, and a contract valuing farm worker housing at ten dollars ($10) per worker without specifying any covered time period, *see id.* at 53.

Plaintiffs' central claim is that Defendant's pay records are inaccurate and grossly under-represent their true compensable time. *See* Tr. Vol. III at 19 (Plaintiffs argue that there is an average deficiency in recorded hours of approximately 2.4 hours per day, per worker). Plaintiffs showed that indeed Defendant's time records are inaccurate. Initially, Plaintiffs sought to establish that Defendant deliberately forged pay records in order to systematically underpay piece-rate workers. *See* Tr. Vol. II at 137 (Testimony of Plaintiffs' expert George Rivero). But Plaintiffs then abandoned this tactic and rescinded their deliberate hours-fixing allegations. *See* Tr. Vol. IV at 78 ("We are saying that the hours are inaccurate. We are not alleging that there is an intentional doing of that. I want [the] record to be clear on that.").

The evidence at trial showed that Defendant's field supervisors, Nahum Ornelas ("Ornelas") and Jose Lopez Gomez ("Lopez"), did not begin counting Plaintiffs' work time upon arrival at the fields, but instead waited until Plaintiffs actually began planting or harvesting onions. *See* Pl. Ex. 46 at 21 (Lopez Dep. Designations); Tr. Vol. I at 177; Tr. Vol. V at 46. Many mornings, Plaintiffs began the day sitting on the buses at the fields awaiting word that the fields were dry enough to begin work. *See* Pl. Ex. 46 at 21-22.

In calculating Plaintiffs' pay, Defendant also excluded the time that Plaintiffs spent waiting for the buses to take them home, or for the field supervisor to tally each group's production. *See* Pl. Ex. 46 at 37-39; Tr. Vol. V at 43. And, Ornelas and Lopez arbitrarily altered stop times at the end of the day to compensate for unrecorded breaks they thought Plaintiffs took throughout the day. *See* Pl. Ex. 46 at 25-26; Tr. Vol. V at 35.

Plaintiffs argued that the Court should use the field working hours recorded for bus drivers who also served as field walkers as a proxy for the hours Plaintiffs actually worked. Field walkers are intermediate supervisors who assist the field supervisors in monitoring Plaintiffs and setting up the fields for work each day. *See* Tr. Vol. V at 7-18. Bus drivers transport Plaintiffs to and from the fields each day. *See id.* at 18-25. Some workers served as both bus drivers and field walkers. *See id.* at 26. These individuals were separately compensated for their bus driving time.

4

Plaintiffs argued that because these field walkers brought Plaintiffs to the fields in the morning, watched them plant or harvest onions during the day, and then took them back to the barracks at the end of the day, their hours recorded for working the fields represented the hours for which Plaintiffs should have been compensated. If this were true, Plaintiffs would be correct. But all field walkers had duties above and beyond supervising Plaintiffs that required them to work longer hours. *See* Doc. 320 at 13.

The field walkers' field walking time consisted of more than merely supervising Plaintiffs. *See* Tr. Vol. V at 23-25. The field walkers/bus drivers had to prepare the buses for the day, call Plaintiffs to tell them when they would arrive, drive Plaintiffs to and from the fields, as well make stops at convenience stores en route. *See id.*

Those field workers who did not drive buses, but whose hours closely resembled those who did, also had additional duties beyond the time Plaintiffs were in the fields. *See* Tr. Vol. V at 7-12. In the planting season, they had to measure the rows to be planted, retrieve unplanted plants from the day before, and distribute new plants. *See id.* In the harvest season, they had to set up bins into which the onions were loaded. *See id.* In both seasons, they had to fill water coolers, deliver them throughout the fields, assess field conditions, report those conditions back to the field supervisor, and clean trash out of the fields. *See id.* Plaintiffs were not present while these duties took place and thus did not work the same number of hours as either type of field walkers. *See id.* at 7.

Plaintiffs also offered personal time recordings from two workers as substitutes for Defendant's inadequate records. *See* Tr. Vol. II at 33-34; Pl. Ex. 47. But these recordings were inconsistent, self-serving, and anecdotal. *See id.* They do not provide a sound basis for calculating Plaintiffs' compensable time.

Although the Court does not accept the field walker/bus driver hours as an adequate proxy for Plaintiffs' hours, the Court finds that Defendant's records undercounted Plaintiffs compensable time by thirty (30) minutes of work time per day.

Additionally, Defendant's field supervisors automatically deducted one hour for a lunch break each day regardless of how long the employee actually stopped working. *See* Pl. Ex. 46 at 26-27; Tr. Vol. IV at 7; Tr. Vol. V at 48 (Nahum Ornelas testified that he did not record the beginning of the lunch period, the end of the lunch period, or the actual time that was taken for lunch.). Plaintiffs presented convincing evidence that the workers often continued planting or harvesting for a substantial part of the lunch hour in order to increase their piece-rate pay. *See* Tr. Vol. I at 200-01; Tr. Vol. II at 9-10. The Court finds that the workers took an average of fifteen minutes for lunch. *See e.g.,* Tr. Vol. II at 33 (Raul Morales-Morales testified that he kept a pocket watch to keep time for his lunch break, and that the workers typically took a 10 to 15 minute break). Plaintiffs are therefore entitled to compensation for an additional forty-five minutes each day.

The Court further concludes that the inaccuracies in Defendant's records exist

5

despite a good faith effort on Defendant's part to record hours properly. Plaintiffs argued that Defendant failed to train its timekeepers on the FLSA's requirements. *See* Tr. Vol. IV at 80.

Bouwense testified to the detailed accounting system Defendant set up to maintain workers' hours. *See* Tr. Vol. IV at 67. The field supervisors made records of Plaintiffs' hours worked on a daily basis. *See id.* Bouwense reviewed these records and input them into Defendant's payroll records soon thereafter. *See id.* Bouwense then provided each employee with a weekly tabulation of their hours and requested that they review the document for correctness. *See id.* at 69-70. Employees objected to their recorded hours on at least two occasions and Bouwense promptly corrected the errors and reimbursed them. *See id.* at 105-09; *see also* Tr. Vol. II at 99 (Crescencio Hernandez-Martinez testified that he complained twice about his pay and was reimbursed both times). Defendant had a subjective, good faith belief that it had systems in place to abide by its FLSA requirements and any violations were negligent at worst.

Finally, Plaintiffs Raul Morales-Morales, Arturo Morales-Morales, and Oscar Antonio Morales-Ramirez claim that they were barred from returning to Defendant's farm in retaliation for filing this suit. The evidence showed that they failed to even apply for work in the 2007 and 2008 planting seasons. *See* Tr. Vol. II at 52, 70; Doc. 320 at 36 (citing Arturo Morales-Morales Dep. at 42). Thus, the Court finds that Defendant did not retaliate against them. *See Jones v. Ala. Power Co.*, 282 F. App'x 780, 785 (11th Cir. 2008).

### III. STATUTES OF LIMITATION

As an initial matter, the Court finds that a six-year statute of limitations applies to all contract claims, and a two-year statute of limitations applies to all FLSA claims.

#### A. Contract Claims

As this Court has previously held, a six-year statute of limitations applies to the contract claims in this case. *See* Doc. 264 at 17. *See also Morales-Arcadio v. Shannon Produce Farms, Inc.*, 2006 WL 140590, at *3 (S.D. Ga. Jan. 12, 2006) (holding that a six-year statute of limitations governs alleged breach of an H-2A contract between employer and employee).

#### B. FLSA Claims

Generally, FLSA claims are subject to a two-year statute of limitations. *See* 29 U.S.C. § 255(a). That period is extended to three years if a cause of action arises out of a willful violation of the FLSA. *See id.*

To establish willfulness, Plaintiffs must show that an employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). If an employer acts unreasonably but not recklessly in determining its legal obligation under the FLSA, then its actions should not be considered willful, and the two-year statute of limitations should be applied. *Lockaby v. Top Source Oil Analysis, Inc.*, 998 F. Supp. 1469, 1471 (N.D. Ga. 1998). Plaintiffs have failed to establish the requisite knowledge or recklessness.

6

Initially, Plaintiffs sought to establish that Defendant deliberately forged pay records in order to systematically underpay piece-rate workers. *See* Tr. Vol. II at 137 (Testimony of Plaintiffs' expert George Rivero). But Plaintiffs then abandoned this tactic and rescinded their deliberate hours-fixing allegations. *See* Tr. Vol. IV at 78 ("We are saying that the hours are inaccurate. We are not alleging that there is an intentional doing of that. I want [the] record to be clear on that.").

Plaintiffs now maintain that Defendant was "on notice of their FLSA obligations because they have defended themselves against at least six lawsuits or claims over the last sixteen years brought on behalf of migrant farm workers in Defendant's employ, including one lawsuit brought by the DOL." *See* Doc. 157 at 20. Defendant, meanwhile, points out that "of the serial claims that Georgia Legal Services have [sic] brought against them, . . . there has not been a single finding of an FLSA violation." Doc. 192 at 14. Defendant urges that "[t]he mere fact that an unsuccessful claim is brought against a company does not establish knowledge or a reckless disregard for the matter of whether the company's practices violate the FLSA," and "[t]he correct question is whether Defendants knew or exhibited a reckless disregard for the matter of whether they *violated* the FLSA." *Id.*

Plaintiffs have failed to show any reckless disregard. Bouwense detailed Defendant's accounting system and the employees' opportunity to correct Defendant's records. *See* Tr. Vol. IV at 67-70.

Any breach by Defendant was not willful. The FLSA's two-year statute of limitations governs Plaintiffs' FLSA claims.

## IV. FLSA WAGE CLAIMS

"The protections of the minimum wage provisions of the FLSA indisputably apply" to Plaintiffs. *Arriaga v. Fla. Pac. Farms, LLC*, 305 F.3d 1228, 1235 (11th Cir. 2002); *see also* 20 C.F.R. § 655.103(b) (2002) ("During the period for which the temporary alien agricultural labor certification is granted, the employer shall comply with applicable federal, State, and local employment-related laws and regulations . . .").

Plaintiffs' wage claims include four sub-issues: (1) whether Defendant properly recorded the start and end of work each day; (2) whether Defendant properly accounted for Plaintiffs' lunch time; (3) whether Defendant compensated Plaintiffs for the correct amount of time spent in orientation at the beginning of each season; and (4) the amount of the housing credit to which Defendant is due in the final calculation of compensation.

This section examines whether Defendant properly recorded all of Plaintiffs' compensable time. The FLSA requires Defendant to pay Plaintiffs the minimum wage times those hours (minus any wage credits). Section IX examines whether Defendant breached this requirement and what, if any, damages it owes Plaintiffs.

"Compensable hours worked within the meaning of the FLSA include . . . time during which employees are required to be present at the work site but must wait to

7

work or must wait to satisfy the procedures imposed by the employer (e.g., inspection of groves)." *Wales v. Jack M. Berry, Inc.*, 192 F. Supp. 2d 1269, 1290 (M.D. Fla. 1999); *see also Birdwell v. City of Gadsden*, 970 F.2d 802, 807 (11th Cir. 1992) (waiting time is compensable where "the time is spent predominately for the employer's benefit") Compensable time also includes periodic short breaks.

> Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry. They promote the efficiency of the employee and are customarily paid for as working time. They must be counted as hours worked. Compensable time of rest periods may not be offset against other working time such as compensable waiting time or on-call time.

29 C.F.R. § 785.18.

In determining the proper compensable time, the Supreme Court has held that:

> Where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-688 (1946), *superseded by statute on other grounds as stated in IBP, Inc. v. Alvarez*, 546 U.S. 21, 41 (2005).

### A. Inaccurate Records

The FLSA obligates every employer to "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him...." 29 U.S.C. § 211(c).

H-2A regulations have a comparable requirement:

> The employer must keep accurate and adequate records with respect to the workers' earnings, including but not limited to field tally records, supporting summary payroll records, and records showing the nature and amount of the work performed; the number of hours of work offered each day by the employer; . . . the hours actually worked each day by the worker; the time the worker began and ended each workday; the rate of pay (both piece rate and hourly, if applicable); the worker's earnings per pay period; . . . and the amount of and reasons for any and all deductions taken from the worker's wages.

20 C.F.R. § 655.122(j)(1).

Plaintiffs have demonstrated that Defendant's records are inaccurate. Defendant's field supervisors, Ornelas and Gomez, admitted to numerous shortcuts, omissions, and estimates in their records. *See* Pl. Ex. 46 at 21; Doc. 320 at 26-27. Defendant's time records cannot serve as the basis for deciding Plaintiffs' compensable time.

### B. Convincing Substitutes

Plaintiffs argued that the Court should use the field working hours recorded for bus drivers who also served as field walkers as a proxy for the hours Plaintiffs actually worked. But these field walkers had duties above and beyond supervising Plaintiffs that required them to work longer hours. *See* Doc. 320 at 13. Their hours are not a convincing substitute for accurate records of Plaintiffs' compensable time.

Plaintiffs also offered personal time recordings from two workers. *See* Doc. 318 at 3. But these exhibits also failed to provide a sound basis for calculating Plaintiffs' compensable time.

Plaintiffs failed to establish a convincing substitute for records showing the actual hours they worked.

### C. Just and Reasonable Inference of Additional Compensation

Nonetheless, Plaintiffs have provided evidence to support a just and reasonable inference of their right to some additional compensable time.

The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of § 11(c) of the Act. And even where the lack of accurate records grows out of a bona fide mistake as to whether certain activities or non-activities constitute work, the employer, having received the benefits of such work, cannot object to the payment for the work on the most accurate basis possible under the circumstances. Nor is such a result to be condemned by the rule that precludes the recovery of uncertain and speculative damages. That rule applies only to situations where the fact of damage is itself uncertain. But here we are assuming that the employee has proved that he has performed work and has not been paid in accordance with the statute. The damage is therefore certain. The uncertainty lies only in the amount of damages arising from the statutory violation by the employer. In such a case "it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts." It is enough under these circumstances if there is a basis for a reasonable inference as to the extent of the damages.

*Anderson*, 328 U.S. at 688 (quoting *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931)).

9

### 1. Daily Hours

Plaintiffs are entitled to an additional thirty (30) minutes of compensable field working time per week for time they worked either before Defendant began recording time or after Defendant stopped recording. As discussed above, Defendant admitted that it did not begin counting the Plaintiffs' time when they arrived at the fields, *see* Pl. Ex. 46 at 21, stopped counting before Plaintiffs left, *see* Doc. 320 at 26-27, and arbitrarily deducted time for unrecorded breaks they thought Plaintiffs took throughout the day, *see* Doc. 319 at 6. Many of these breaks were likely fully compensable. *See* 29 C.F.R. § 785.18.

Defendant contends that the time it shorted Plaintiffs was *de minimis*. *See* Doc. 320 at 27 (arguing that even 10-15 minutes per day is *de minimis*). But the *de minimis*

> rule applies only where there are uncertain and indefinite periods of time involved of a few seconds or minutes duration, and where the failure to count such time is due to considerations justified by industrial realities. An employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him.

29 C.F.R. § 785.47. Defendant has not shown that any administrative impracticality prevented it from counting this time. *See id.*; *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1414 (5th Cir. 1990). Defendant may not simply ignore ten to fifteen minutes of work it required of Plaintiffs each day.

While the exact amount of time Plaintiffs were shorted is impossible to precisely measure, this was through no fault of their own. Plaintiffs performed work for which Defendant did not pay them. Plaintiffs have provided a basis for the reasonable inference that they merit thirty (30) extra minutes of compensable time for each week they worked for Defendant.

### 2. Lunch

The Court finds that although Defendant had an internal policy of required one hour lunch breaks, Plaintiffs rarely, if ever, took such a break. Plaintiffs showed, by a just and reasonable inference, that they only took an average of fifteen minutes for lunch. *See Anderson*, 328 U.S. at 687-688. Plaintiffs are entitled to an additional forty-five (45) minutes per day of compensable time for the deducted time they actually worked.

Defendant did not present any evidence that a set lunch hour was called at any time, but only that Plaintiffs were required to take one hour off at some point during the day. Defendant argues that it should be able to deduct one hour from Plaintiffs' work hours for this lunch hour, regardless of whether they took the break. Plaintiffs argue that they should be paid for all time spent actually working.

> Periods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes are not hours worked. He is not completely relieved from duty and cannot use the time

10

effectively for his own purposes unless he is definitely told in advance that he may leave the job and that he will not have to commence work until a definitely specified hour has arrived.

29 C.F.R. § 785.16.

"Bona fide meal periods are not worktime." *See* 29 C.F.R. § 785.19. "In order to be considered a bona fide meal period, however, the regulations require complete relief from duty: 'The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating.'" *See Kohlheim v. Glynn Cnty.*, 915 F.2d 1473, 1477 (11th Cir. 1990) (quoting 29 C.F.R. § 785.19 (1990)).

"Work not requested but suffered or permitted is work time. . . . The reason is immaterial. The employer knows or has reason to believe that he is continuing to work and the time is work time." *See* 29 C.F.R. § 785.11.

> [I]t is the duty of management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so.

29 C.F.R. § 785.13; *see also Reich v. Dep't of Conservation and Natural Res.*, 28 F.3d 1076, 1083 (11th Cir. 1994) (Employer could not rest on policy statements that overtime was prohibited).

These regulations appear to point in opposite directions. Defendant had reason to know Plaintiffs were working during their lunch hour because it happened in front of the field walkers. But Defendant points the Court to section 785.19's use of the word "required." Because Plaintiffs were not *required* to work during lunch, Defendant argues the time is not compensable. Plaintiffs point to sections 785.11 and 785.13's focus on whether employees are actually working.

Thirty-seven years ago, the Northern District of Georgia applied these regulations to a similar fact pattern. *See Clark v. Atlanta Newspapers, Inc.*, 366 F. Supp. 886 (N.D. Ga. 1973). An Atlanta Journal employee brought suit for his employer's failure to include lunch periods in overtime computations. *See id.* at 891. Employees were free to leave and were relieved of all duties for one hour each day. *See id.* at 891-92. Nonetheless the employee ate his lunch at his desk while answering phones and doing miscellaneous work. *See id.* at 891. The court held that this lunch time was not compensable work time because he had been relieved of his duties. *See id.* at 892. It dismissed 29 C.F.R. § 785.11 as inapplicable because the cases the regulation cited involved situations in which employees were required to remain on duty during break periods. *See id.* The court then dismissed 29 C.F.R. § 785.13 because it cited no decisional authority and the court interpreted it to apply only to the same situations where § 785.11 applied. *See id.*

*Clark* was decided before *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). Post-

*Chevron*, courts are not free to so easily dismiss the clear language of an agency's construction of a statute. *See id.* at 843. Where Congress has not directly spoken to the precise question at issue, the court must follow the agency's interpretation unless it is arbitrary, capricious, or manifestly contrary to the statute. *See id.* at 843-44.

The FLSA does not speak directly to the issue of whether time spent working through a designated lunch hour is compensable. *See* 29 U.S.C. § 201 *et seq.*

Regulation 29 C.F.R. § 785.13 does directly address this case. Defendant had an unenforced policy that required workers to take a full hour off to eat lunch. But the facts showed that Plaintiffs actually worked an average of forty-five minutes of this hour. Defendant "cannot sit back and accept [these] benefits without compensating for them." *See id.* If it did not want to pay for work performed during this lunch hour, Defendant had a duty to see that work was not performed. *See id.*

Defendant argues that sections 785.16 and 785.19 also directly address this case and make one hour a day not compensable because Plaintiffs were officially relieved of their duties and not required to work.

First, Defendant failed to prove 29 C.F.R. § 785.16 applies to this case. Plaintiffs are not "relieved from duty . . . unless [they are] definitely told in advance that [they] may leave the job and that [they] will not have to commence work until a definitely specified hour has arrived." *See id.* Defendant admitted that there was no specific lunch hour and it failed to prove that each Plaintiff was "definitely told in advance that he may leave the job." *See id.*; Tr. Vol. V at 46-48.

Even if both regulations did apply, 29 C.F.R. §§ 785.11 and 785.13 would carry the day. Those regulations anticipate possible conflicts between work rules barring compensable activity and factual scenarios where employees nonetheless worked to their employer's benefit. The DOL has ruled that where such a conflict exists, the employer "cannot sit back and accept the benefits without compensating for them." 29 C.F.R. § 785.13; *see also Reich*, 28 F.3d at 1083. This ruling is neither arbitrary, capricious, nor manifestly contrary to the FLSA. *See Chevron*, 467 U.S. at 843-44.

Defendant points to several other cases finding that an employee's lunch period is not compensable time. *See* Doc. 320 at 21-25. But these cases involve employees who take a certain lunch period away from their work stations, but must remain on call and may be occasionally interrupted to deal with some emergency. *See, e.g., Bridges v. Amoco Polymers, Inc.*, 19 F. Supp. 2d 1375, 1379 (S.D. Ga. 1997) (employees sued for unpaid meal break where they were subject to recall for emergencies); *see also Myracle v. Gen. Elec. Co.*, 33 F.3d 55, at *5 (6th Cir. 1994) (mechanics sued for unpaid lunch period where their breaks were occasionally interrupted by emergencies).

This case is different. Plaintiffs did not suffer occasional interruptions to their lunch break. They simply did not take a one hour lunch.

In *Kohlheim v. Glynn Cnty.*, 915 F.2d 1473 (11th Cir. 1990), the court held that the

plaintiff firefighters' meal periods were compensable because they were on call during that time to respond to emergencies. This case was different from Defendant's on call cases because a firefighter's entire job is to be on call to respond to emergencies. *See id.* at 1477. Like the firefighters in *Kohlheim*, Plaintiffs continued their ordinary duties through their designated meal period and should be compensated.

"[T]he essential consideration in determining whether a meal period is a bona fide meal period or a compensable rest period is whether the employees are in fact relieved from work for the purpose of eating a regularly scheduled meal. . . . [W]hat matters in meal period cases is whether the employees are subject to real limitations on their personal freedom which inure to the benefit of their employer." *Kohlheim*, 915 F.2d at 1477, 1477 n.19. Plaintiffs were not in fact relieved from work during forty-five minutes of their lunch hour. Plaintiffs spent this time harvesting or planting onions which inured entirely to the benefit of their employer.

Forty-five minutes of Plaintiffs' lunch hour is compensable. The remaining fifteen minutes were bona fide meal periods under 29 C.F.R. § 785.19.

### 3. Orientation

Defendant credited Plaintiffs with one hour's pay for orientation each season. But testimony showed that Plaintiffs were required to be present for an average of two and one half (2.5) hours. *See* Tr. Vol. I at 196; Tr. Vol. II at 8, 79.

Therefore, they are entitled to an additional one and one half (1.5) hours of compensable time each season.

### D. Defendant's Burden

Where the employee "produces sufficient evidence to show the amount and extent of [their] work as a matter of just and reasonable inference[, t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *See Anderson*, 328 U.S. at 688.

Defendant failed to produce any evidence, apart from its inaccurate tally sheets, that could prove the precise amount of Plaintiffs' work or negate their inference. Because Defendant failed to produce such evidence, the Court will award damages where the wages Defendant paid fell below the minimum pay required for the hours worked established by Plaintiffs. *See id.*

### E. Good Faith

Employees who prevail in a minimum wage action are ordinarily entitled to recover their unpaid wages as well as an equal amount in liquidated damages. *See* 29 U.S.C. § 216(b). But if the employer shows that it acted in good faith and "had reasonable grounds for believing that [its] act or omission was not a violation of the [FLSA] . . . the court may, in its sound discretion, award no liquidated damages." *See* 29 U.S.C. § 260; *see also Spires v. Ben Hill Cnty.*, 980 F.2d 683, 689 (11th Cir. 1993); *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 466 (5th Cir. 1979). The employer must prove that it had: (1) a

subjectively honest intention to ascertain what the FLSA requires and to act in accordance with it; and (2) objectively reasonable grounds for believing that its conduct comported with the FLSA. *See Dybach v. State of Fla. Dep't of Corrs.*, 942 F.2d 1562, 1566-67 (11th Cir. 1991).

Defendant acted in good faith. As discussed above, Defendant's field supervisors made records of Plaintiffs' hours worked on a daily basis. *See* Tr. Vol. IV at 67. Bouwense reviewed these records and input them into Defendant's payroll records soon thereafter. *See id.* She then consulted the employees to check whether the recorded hours were proper and corrected any errors brought to her attention. *See id.* at 105-09.

The Court's holding that these records undercounted Plaintiffs' hours in certain respects does not preclude finding that Defendant attempted to meet its obligations in good faith. Defendant knew its operations were governed by the FLSA and subjectively believed it was abiding by the law's requirements. The safeguards it set up provided Defendant an objectively reasonable basis for this belief. As to its automatic lunch deduction, Defendant was relying on an analogous Northern District of Georgia case. *See Clark v. Atlanta Newspapers, Inc.*, 366 F. Supp. 886 (N.D. Ga. 1973). Defendant acted in good faith.

The Court elects to use its discretion to withhold liquidated damages under these circumstances, in the event Plaintiffs could show an FLSA violation.

## V. CONTRACT WAGE CLAIMS

Plaintiffs also claim that Defendant breached the operative employment contract for each season by failing to pay the proper wages. In order to prove breach of the employment contract, Plaintiffs must prove: (1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach. *See Bartholomew v. AGL Resources, Inc.*, 361 F.3d 1333, 1338-1339 (11th Cir. 2004) ("The elements of a right to recover for a breach of contract under Georgia law are simply 'the breach and the resultant damages to the party who has the right to complain about the contract being broken.'") (citing *Budget Rent-A-Car, Inc. v. Webb*, 220 Ga. App. 278 (1996)).

The parties' H-2A clearance orders constitute valid contracts between Plaintiffs and Defendant. *See* Doc. 119, ¶ 22; Doc. 137, ¶ 22. There are ten clearance orders at issue in this case, all of which provide that Defendant was to pay workers the greater of the AEWR and the federal minimum wage. *See* Doc. 319 at 2; Doc. 320 at 4. The evidence established that, in each case, the AEWR was the higher rate. *See* Doc. 320 at 5. In the clearance orders, Defendant also agreed to comply with applicable federal, state, and local employment-related laws and regulations. *See* Doc. 319 at 3.

In order to determine whether Defendant breached its contractual obligations, the Court must decide whether the actual pay received by each Plaintiff matched or exceeded the appropriate number of hours, multiplied by the AEWR. As previously discussed, the Court has found that Defendant under-represented Plaintiffs'

14

hours worked. The Court's adjusted calculation with regard to the FLSA claims applies equally under the contract claims, and Plaintiffs should be credited accordingly. *Cf.* 20 C.F.R. § 655.122(j)(1) (requiring H-2A employers to keep the same type of accurate time records as required by the FLSA); *Avery v. City of Talladega*, 24 F.3d 1337, 1348 (11th Cir. 1994) ("If a violation of the FLSA has occurred, then a violation of the contract, which incorporates the FLSA, will have occurred as well.").

## VI. HOUSING CREDIT

As the Court has previously discussed at length, Defendant is entitled to a reasonable credit for the cost of housing provided to Plaintiffs and other H-2A workers. *See* Doc. 264 at 18-20. "The only question that remains is the amount of the § 203(m) wage credit that Bland Farms may claim." *See id.* at 20.

At trial, Defendant proved, by way of expert testimony, that the housing provided to Plaintiffs should be valued at fifty dollars ($50) per week. *See* Tr. Vol. IV at 46.

Plaintiffs argued that fifty dollars per week was an excessive credit for the type and condition of the housing Defendant provided. Plaintiffs did not present their own expert testimony to rebut Gibson's opinion, and the thin evidence presented was otherwise inadequate to demonstrate what a preferable figure might be. *See, e.g., id.* at 53 (discussing a contract valuing farm worker housing at $10 per worker without specifying any covered time period).

The Court finds that, based on the evidence presented at trial, Defendant is entitled to a fifty dollar per week, per worker housing credit.

## VII. TRAVEL EXPENSES

If an expense incurred by an H-2A worker is determined to be "primarily for the benefit of the employer," the employer must reimburse the employee during the first workweek in which the expense arose up to the amount needed to comply with the federal minimum wage laws. *Arriaga v. Fla. Pac. Farms, LLC*, 305 F.3d 1228, 1237 (11th Cir. 2002).

To determine whether costs were for the benefit of the employer, the Court must consider whether the employment related cost is a personal expense that would arise as a normal living expense, and whether the cost is "incident of and necessary to the employment." *Arriaga*, 305 F.3d at 1241-43. If the cost is not a normal living expense and was necessary for employment, then the cost is incurred for the employer's benefit and should be reimbursed if wages are brought below the FLSA minimum. *See id.* at 1244.

The Court has already held that transportation, lodging, and immigration expenses (not including passport expenses) are "*Arriaga* expenses" and should have been reimbursed. *See* Doc. 264 at 9-10. The only remaining factual issues are: (1) whether Plaintiffs are entitled to additional subsistence compensation, and (2) whether Plaintiffs are entitled to additional compensation for hotel costs.

### A. Subsistence Pay

Employers are required to pay H-2A workers a subsistence amount equal to the

15

cost of three meals for each day of travel to the work site. *See* 20 CFR § 655.102(b)(5) (2008); 73 Fed. Reg. 10289; *see also, e.g.,* Doc. 108-2 at 17 (2004 H-2A Clearance Order). Defendant advanced these payments to Plaintiffs at orientation in amounts based on two and one half (2.5) days of travel. *See* Tr. Vol. I at 124.

Plaintiffs failed to establish how much additional subsistence pay, if any, each worker should have been given, and because Defendant demonstrated that it has a workable procedure for making supplemental payments should employees show it takes them longer than 2.5 days to reach Bland Farms, Plaintiffs are not entitled to recover any additional subsistence pay.

### B. Hotel Costs

Plaintiffs also sought to prove entitlement to reimbursement for a hotel stay in Monterrey, Mexico. Bouwense testified that Defendant reimburses hotel costs for workers who stay overnight in Monterrey during their trip to Bland Farms. *See* Tr. Vol. I at 126. As with subsistence pay, workers were given the opportunity, to present receipts and request supplemental reimbursement. *See id.*

Plaintiffs failed to present any receipts establishing the fact and cost of the hotel stays. *Compare* Tr. Vol. I at 237 (Florencio Cortez Gonzalez testified, but presented no documentation, that the hotel cost varied depending on the number of people in the room, but fell within the range of 120 to 150 pesos per worker), *with* Tr. Vol. II at 14, 19 (Esteban Martinez-Hernandez testified that hotel costs totaled between 70 and 100 pesos per worker depending on the hotel, and admitted that he never turned in receipts), and *id.* at 41, 55 (Raul Morales-Morales testified to hotel costs of between 160 and 180 pesos per person, and that he never turned in receipts).

The Court finds that the lack of receipts, together with the inconsistent testimony, fails to establish Plaintiffs' claims for additional lodging reimbursement.

### VIII. RETALIATION

"The FLSA protects persons against retaliation for asserting their rights under the statute. *See Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342 (11th Cir. 2000). Plaintiffs were further protected from retaliation by the H-2A contracts' anti-retaliation provisions. Plaintiffs Raul Morales-Morales, Arturo Morales-Morales, and Oscar Antonio Morales-Ramirez ("the Retaliation Plaintiffs") alleged that they were not rehired in the 2007 and 2008 planting seasons because of their FLSA claims against Defendant. To prove an FLSA retaliation claim, they must show: "(1) [they] engaged in activity protected under the act; (2) [they] subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action." *See id.*

The evidence showed that the Retaliation Plaintiffs failed to apply for work in the 2007 and 2008 planting seasons because they feared they would not be rehired. Defendant's failure to hire workers who did not apply for work is not an adverse employment action. *See Jones v. Ala. Power Co.*, 282 F. App'x 780, 785 (11th Cir. 2008). The Retaliation Plaintiffs failed

16

to establish a prima facie case of FLSA retaliation.

To prove a violation of their contractual freedom from retaliation, the plaintiffs must prove a "breach and the resultant damages to the party who has the right to complain about the contract being broken." *See Odem v. Pace Academy*, 235 Ga. App. 648, 654 (1998). Where the Retaliation Plaintiffs cannot show that they even attempted re-employment, they did not prove a breach of contract.

### IX. DAMAGES

The Court ordered the parties to submit damages calculations based on a set of preliminary findings. *See* Docs. 325, 328. The Court also attached a set of forms to be used for submitting damages calculations. *See id.* at 4. The Court's findings were that:

(1) Plaintiffs failed to prove their entitlement to any additional amount in damages for any hotel stay in Monterrey, Mexico;

(2) Plaintiffs failed to prove their entitlement to any additional amount in subsistence payments for their trips from their homes in Mexico to Defendant's farm;

(3) Plaintiffs failed to prove Defendant willfully violated the FLSA;

(4) Plaintiffs are entitled to an additional one and one half (1.5) hours of compensable time in each season in which they worked for Defendant for the total time spent in orientation sessions;

(5) Plaintiffs are entitled to an additional thirty (30) minutes of compensable field working time per week for time they worked either before Defendant began their recorded time or after Defendant stopped their recorded time;

(6) Plaintiffs for whom Defendant automatically deducted one hour for lunch are entitled to an additional forty-five (45) minutes per day of compensable time;

(7) Defendant is entitled to take a fifty dollar ($50) per week per plaintiff housing credit for the housing it provided Plaintiffs; and

(8) Defendant proved it acted in good faith such that liquidated damages will not be assessed.

*See* Docs. 325, 328.

Based on those findings, Plaintiffs filed calculations showing that Defendant breached its contractual obligations in the amount of $13,196.66. Plaintiffs represented that the Court's preliminary findings preclude a finding of any FLSA violation and elected not to submit any damages calculations based on FLSA violations. *See* Doc. 326.

Plaintiffs also noted that the Court's damages forms omitted any consideration of subsistence payments in the first week's damages calculations. *See* Doc. 326 at 1-2. This amount is required by the H-2A contracts to be paid halfway through the season to those employees who remain employed. *See, e.g.*, Doc. 108-2 at 17. Therefore, it is inappropriate to include it

17

within either Defendant's first week obligations or its first week payments toward satisfaction of those obligations. Further both parties agree that Defendant paid for 2.5 days of subsistence and the Court has held that Plaintiffs failed to prove any additional entitlement.

Defendant largely stipulated to Plaintiffs' calculations, but objected to Plaintiffs' listed amount of bus fare owed in 2004 and 2005. *See* Doc. 330. Defendant represents that it agreed "to use the amounts indicated on Plaintiffs' signed travel reimbursement forms" for bus fare and that this amount is $12 less than Plaintiffs' listed in their damages charts. *See id.* Plaintiffs failed to carry their burden on these travel expenses and thus the Court will adopt those costs stipulated by the Defendant. Thus, the Court will use the bus fare numbers from Defendant's charts. *See* Doc. 330-1 at 1-2.

Defendant also argues that the FLSA's two-year statute of limitations precludes compensation of Plaintiffs' 2004 and 2005 first week damages claims. *See* Doc. 330. This argument fails to appreciate the nexus between Plaintiffs' contract and FLSA claims. Although Plaintiffs cannot claim first week damages through the FLSA for those years, Defendant separately agreed by contract to abide by the FLSA's terms. Any breach carries a six-year statute of limitations and allows Plaintiffs to collect for 2004 and 2005 violations.

But Plaintiffs do not claim that their first week's pay was shorted more than four dollars ($4). The twelve dollar ($12) reduction in bus fare owed to Plaintiffs erases their paltry first week shortage claims.

The Court adopts Defendant's damages forms, *see* Docs. 330-1, 330-2, and finds that Defendant violated their contractual duties to Plaintiffs in the amount of thirteen thousand eighty dollars and eighteen cents (13,080.18). *See id.*

## X. CONCLUSION

***THE COURT ENTERS JUDGMENT IN FAVOR OF PLAINTIFFS IN THE AMOUNT OF THIRTEEN THOUSAND EIGHTY DOLLARS AND EIGHTEEN CENTS (13,080.18).*** Defendant is liable to each individual Plaintiff in the amounts listed in Doc. 330-2.

This 16th day of June 2011.

*/s/ B. Avant Edenfield*
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

18