**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

John Ley
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

November 29, 2012

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 11-13835-EE
Case Style: David Ojeda-Sanchez, et al v. Carmelo Hernandez-Rubio, et al
District Court Docket No: 6:08-cv-00096-BAE-GRS

Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1.

Counsel appointed under the CRIMINAL JUSTICE ACT must file a CJA voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for a writ of certiorari (whichever is later).

Pursuant to Fed.R.App.P. 39, costs taxed against appellants.

The Bill of Costs form is available on the internet at www.ca11.uscourts.gov

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Lois Tunstall, EE at (404) 335-6224.

Sincerely,

JOHN LEY, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6161

OPIN-1A Issuance of Opinion With Costs

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-13835

_____

D.C. Docket No. 6:08-cv-00096-BAE-GRS

DAVID OJEDA-SANCHEZ,
FLORENCIO CORTES-GONZALEZ,
ALFONSO GUERRERO-HERNANDEZ,
ARTURO MORALES-MORALES,
RAUL MORALES-MORALES,
OSCAR ANTONIO MORALES-RAMIREZ,
JUAN PABLO ORTIZ-ROCHA,
JAVIER GUERRERO-CARRILLO,

                                Plaintiffs-Appellants,

BERNABE ARCADIO-RUBIO,
SAUL HERNANDEZ-ANDABLO,
SAMUEL ROJO-ANDABLO,
BONIFCIAO SANCHEZ-COBARRUBIAS,
RICARDO SANTOS-HERNANDEZ,
CRESCENCIO HERNANDEZ-MARTINEZ,
JOEL RUBIO-MORALES,
GUADALUPE HERNANDEZ-MARTINEZ,
ZEFERINO HERNANDEZ-MARTINEZ,
PEDRO HERNANDEZ-HERNANDEZ,
DOMINGO HERNANDEZ-HERNANDEZ,
SAMUEL HERNANDEZ-HERNANDEZ,
LUIS HERNANDEZ-HERNANDEZ,
ANGEL HERNANDEZ-MARTINEZ,
GERONIMO MARTINEZ-HERNANDEZ,
PROCORO DEMETRIO MEDINA-HERNANDEZ,

JUAN HERNANDEZ-CRUZ,
PEDRO VICTOR-HERNANDEZ,
ISRAEL VICTOR-SERNA,
MANUEL SANTILLAN-ALANIS,
LUIS RIVER-PADILLA,
JULIO RIVERA-VALDES,
REYNO ANTONIO-HERNANDEZ,
SANTOS MARCELO DAMASO-HERNANDEZ,
ANASTACIO HERNANDEZ-HERNADEZ,
BENITO FRANCISCO HERNANDEZ-HERNANDEZ,
BENJAMIN HERNANDEZ-HERNANDEZ,
MARCELINO FRANCISCO HERNANDEZ-HERNANDEZ,
NASARIO HERNANDEZ-HERNANDEZ,
OSCAR ANTONIO HERNANDEZ-HERNANDEZ,
RUBEN HERNANDEZ-HERNANDEZ,
SANTOS HERNANDEZ-HERNANDEZ,
ESAU HERNANDEZ-MARTINEZ,
FIDEL MARTINEZ-HERNANDEZ,
JOSE ANTONIO HERNANDEZ-MARTINEZ,
HORACIO HERNANDEZ-MEJIA,
FIDEL MARTINEZ-MARTINEZ,
CRESCENCIO MEDINA-MARTINEZ,
PATRICIO MEDINA-HERNANDEZ,
HILARIO LORENZO RAMIREZ-HERNANDEZ,
PRIMITIVO RAMIREZ-HERNANDEZ,
SANTOS CAMILO TORRES-HERNANDEZ,
LORENZO GUERRERO-CHAVEZ,
SANTOS ESTEBAN HERNANDEZ-HERNANDEZ,
SANTOS MARTINEZ-RUBIO,
BULMARO ELIZALDE-NERI,
JAVIER ELIZALDE-NERI,
ROSALIO ELIZALDE-NERI,
ELODIO RIOS-CHAVEZ,
MISAEL TREJO_RUIZ,
PATRICIO RIOS CHAVEZ,
ODILON ANTONIO-CAMARGO,
RAMON PALACIOS-PAREDES,

2

AGUSTIN COVARRUBIAS-HERNANDEZ,
ESTEBAN HERNANDEZ-MARTINEZ,
HUGO OLVERA-GONZALEZ,
VICTORIANO MANUEL CAMPOS-QUEZADA,
VICTORIANO MANUEL SALGUERO-GONZALEZ,
REYES CARLIN-VIDAL,
HORACIO RUIA-RANGEL,
OBISPO CRUZ-TREJO,
SERAFIN FERNANDEZ-VITE,
JUAN OLVERA-RUIZ,
AANDRES HERNANDEZ-HERNANDEZ,
MARDONIO MARTINEZ DE LA CRUZ,
FILIMON SOLIS-VELAZQUEZ,
OMAR SANCHEZ-COVARRUBIAS,
IGNACIO FERNANDEZ-CRUZ,
ABEL CIRIACO HERNANDEZ-BAUTISTA,
EFREN MAGANA-BANALES,
FELIX MEJIA-HERNANDEZ,
HECTOR PEREZ-CARRETO,

                              Opt-In Plaintiffs – Appellants,

CARMELO HERNANDEZ-RUBIO,
JUAN JOSE HERNANDEZ DE LA CRUZ,

                              Movants – Appellants,

versus

BLAND FARMS, LLC,
MICHAEL HIVELY, individually,
DELBERT BLAND, individually,

                              Defendants – Appellees,

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(November 29, 2012)

3

Before JORDAN and HILL, Circuit Judges, and HOOD,* District Judge.

HILL, Circuit Judge:

Plaintiffs/Appellants are Mexican seasonal farmworkers. They sued Bland Farms, LLC, asserting violations of the Fair Labor Standards Act and breach of contract. Following an eight day bench trial, the district court found a violation but in an amount less than claimed. Additionally, the district court rejected the workers' claim for liquidated damages, refused to enlarge the limitations period and denied the workers leave to amend to add twenty-one additional workers. The workers appeal these adverse rulings.

I.

The appellants are Mexican seasonal farmworkers (the "Farmworkers") who work for Bland Farms, LLC ("Bland") as guest workers pursuant to the H-2A program. Bland employed the workers during the 2004-2008 seasons to plant and harvest onions. Bland employs field supervisors who record the time and amount of onions planted or harvested by the Farmworkers. Bland also employs "field

---

*Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

walkers" who help supervise the Farmworkers and otherwise assist the supervisors. Some of the field walkers are also paid to drive a crew bus to and from the fields. The employment relationships between the workers and Bland are governed by the Fair Labor Standards Act (the "FLSA") as well as by contractual agreements found in H-2A clearance orders that Bland filed with the Department of Labor (the "DOL").

Farmworkers central claim is that Bland's supervisors did not accurately record Farmworkers' work hours and, as a result, significantly underpaid them. Farmworkers claim that Bland's inaccurate record-keeping was willful and undertaken in bad faith. The district court agreed that Bland's records contained inaccuracies, but awarded Farmworkers substantially less additional work time than they had claimed. Additionally, the district court found that Bland's FLSA violation was not willful and its conduct not in bad faith. Farmworkers appeal these holdings.

II.

1. *The Wage Claims*

Farmworkers claim an average deficiency in recorded hours of approximately 2.4 hours per day, per worker. Although they initially sought to prove that Bland deliberately forged pay records as part of a scheme to

systematically underpay the workers, Farmworkers abandoned this claim midway through the bench trial when the evidence failed to support that claim.[1]

At trial, Bland's field supervisors admitted to numerous shortcuts, omissions, and estimates in their time-keeping records. As Farmworkers' counsel put it, "apprehension of the rules by [Bland's supervisors] had the effect of producing undercounting [of hours]. It is not because they are bad people. It is just that they had an apprehension that we think is inconsistent with the law."

The evidence was that, on many mornings, Farmworkers began the day sitting on the buses at the fields awaiting word that the fields were dry enough to begin work. Bland's field supervisors did not begin counting Farmworkers' work time upon arrival at the fields, but instead waited until Farmworkers actually began planting or harvesting onions. The supervisors also excluded lunch time and the time that Farmworkers spent waiting for the buses to takes them home or for the field supervisor to tally each group's production. Stop times were sometimes altered at the end of the day to compensate for unrecorded breaks Farmworkers took throughout the day. As a result of these practices, the district court concluded that Farmworkers established that Bland's pay records were

---

[1] In response to the district court's query about proof of deliberate fraud, Farmworkers' counsel noted that "sometimes the case you plan and sometimes the case you prove does turn out to be a little different."

inaccurate as to the start and end of work each day and that they were due additional compensation.[2]

Under *Anderson v. Mt. Clemens Pottery, Co.*, 328 U.S. 680 (1946), the Farmworkers had two avenues open to them to establish the amount of work for which they were undercompensated. First, they could provide the court with "convincing substitutes" for Bland's records, which would show the correct amount of time they worked. Farmworkers argued that the court should use the hours recorded for bus drivers who also served as field walkers.[3] They argued that since the bus drivers transported the Farmworkers to the fields in the morning, walked the fields all day, and then drove the busses home at night, their hours recorded for walking the fields were a convincing substitute for the inaccurate Farmworker time records.[4]

The court rejected these records as a convincing substitute because the bus drivers/field walkers had additional duties requiring additional work time beyond

---

[2] Farmworkers were due to be paid for lunch time (45 minutes per day), as well, and the district court so held.

[3] Field walkers are intermediate supervisors who assist the field supervisors in monitoring the Farmworkers and setting up the fields for work each day. Some workers served as both bus drivers and field walkers. These individuals were separately compensated for their bus driving time and duties.

[4] Farmworkers also offered the personal time records kept by two workers as substitutes for the inadequate records, but the court found these to be "inconsistent, self-serving, and anecdotal" and rejected them as not a sound basis for calculating the other workers' time.

the time the Farmworkers were in the fields.[5] The evidence supported this finding of fact and, therefore, it is not clearly erroneous.[6]

The second avenue open to the Farmworkers under *Mt. Clemens* is to "produce sufficient evidence to show the amount and extent of that [uncompensated] work as a matter of just and reasonable inference." 328 U.S. at 688. The district court found that the evidence established, and Bland did not deny, that Bland "did not begin counting the Plaintiffs' time when they arrived at the fields, stopped counting before Plaintiffs left, and arbitrarily deducted time for unrecorded breaks they thought Plaintiffs took throughout the day. Many of these breaks were likely fully compensable." As a result, the court held that Farmworkers had produced sufficient evidence from which the court could reasonably infer that they had worked some time for which they were not compensated.

In calculating how much uncompensated time could reasonably be inferred from the credible evidence, the district court concluded, based upon the testimony

---

[5] The bus drivers were awarded two additional hours each day for time preparing to and actually driving before and after field work and for being on 24 hour call to transport Farmworkers to and from stores and other destinations. Other comparators offered also had additional duties during which Farmworkers were not present.

[6] Bland's two field supervisors and its payroll accountant all testified to the extra duties performed by fieldwalkers.

regarding the Farmworkers' time of arrival at the fields and occasional time spent sitting on busses or waiting for busses at the end of the day, that it was reasonable to infer that each worker was due an extra 30 minutes of compensable time per week.[7]

The Farmworkers dispute this finding. They argue that since Bland was unable to negate the inference that the workers were due some extra compensation or to produce evidence of the precise amount of work performed by them, that they are entitled, as a matter of law, to the 2.4 extra hours they claimed and for which they provided supporting testimony and their own personally recorded time sheets.[8] We disagree.

Farmworkers misunderstand the *Mt. Clemens* standard. In the absence of convincing substitutes for Bland's faulty records, the district court was obligated under *Mt. Clemens* to award damages to Farmworkers based on "whatever reasonable inferences can be drawn from the employee's evidence . . . ." 328 U.S.

---

[7] Some workers claimed significantly greater uncompensated hours – ranging from 20.75 to 37.50 in the week for which records were produced. These hours were significantly greater than the 2.4 hour a day difference the Farmworkers generally claimed as the difference between the field worker and the field walker hours.

[8] As noted above, this claim for uncompensated time was firmly rooted in Farmworkers' theory that the bus driver/field walkers hours were an adequate proxy for the Farmworkers' hours. The district court rejected that theory and, for the same reasons, held that the evidence of bus driver/field walker hours also was not probative as to the amount of hours worked by Farmworkers.

9

at 693. But where the employer produces evidence "to negative the reasonableness of the inference to be drawn from the employees' evidence," *id.* at 688, the district court is not relieved of its responsibility as the finder of fact to weigh the evidence, assess the credibility of the witnesses, and evaluate the reasonableness of the permissible inferences. We express no opinion on what course would be required of the district court in the absence of such employer evidence because that is not this case.

In this case, Bland did produce substantial evidence tending to negate the 2.4 hours claimed by Farmworkers. First, as noted above, this claim for uncompensated time was firmly rooted in Farmworkers' theory that the bus driver/field walkers hours were an adequate proxy for the Farmworkers' hours. The district court rejected that theory and, for the same reasons, held that the evidence of bus driver/field walker hours was not probative as to the amount of hours worked by Farmworkers. As a result, Farmworkers' claim that they worked an extra 2.4 hours a day is not a reasonable inference on the proxy theory of the facts.

Furthermore, there was extensive testimony from Bland payroll clerk Bouwense that she was "accessible" to the workers for corrections to the time sheets, that she double checked supervisor time sheets with actual employees

whenever "something on a tally sheet that didn't look right" or "make sense," and that she would correct tally sheets if necessary "after I had these discussions with the field supervisors." She also testified that when she compared plaintiff Morales-Morales' personally kept time sheets provided her during discovery with those provider her by Bland's field supervisor for part of the relevant time period that "there wasn't that much of a difference" and that "it came out to be like .14 hours." The district court found this evidence to be credible, further undermining the reasonableness of the inference that Farmworkers were entitled to an additional 2.4 hours per day .

Farmworkers' only other evidence supporting an inference as to the amount of uncompensated time came in the testimony of individual plaintiffs as to their recollection of the hours they had worked. The district court, however, expressed its reservations about this testimony on more than one occasion, characterizing it as "obviously . . . well coached and not very persuasive," and "self-serving and contradictory." Two workers offered their own personal time records, but the district court found these to be "inconsistent, self-serving, and anecdotal." The

court concluded that this evidence did not "provide a sound basis for calculating Plaintiffs' compensable time."[9]

Farmworkers complain that the district court incorrectly rejected this testimony because it was "imprecise." We disagree. It is clear that the district court recognized its obligation to draw all reasonable inferences from Farmworkers' evidence in support of an award of damages, "even though the result be only approximate." *Mt. Clemens*, 328 U.S. at 688. What the district court refused to do, however, was to award damages based upon *unreasonable* inferences. The district court's order after hearing all the evidence in this case over an eight day period rests upon a careful exposition of that evidence and a reasoned explanation of the reasonable inferences that could be drawn from it. We find no clear error in the district court's findings of fact or application of the law regarding the amount of compensable time due Farmworkers.[10]

2.   *The Statute of Limitations and Liquidated Damages*

---

[9] The district court rejected the claim made in these records that the workers worked an additional 3.5 to 6.25 hours a day more than that shown on the Bland tally sheets.

[10] The parties agree that a recent decision of this court has resolved the issue of the housing credit that the district court awarded Bland. *See Ramos-Barrientos v. Bland*, 661 F.3d 587 (11th Cir. 2011). This case will be remanded for a recalculation of damages under this recent rule.

12

Under the FLSA, the two-year statute of limitations is extended to three years if a cause of action arises out of a willful violation of the FLSA. 29 U.S.C. § 255(a). In addition, employees who prevail under the FLSA are entitled to recover liquidated damages unless the employer makes an affirmative showing that it acted in good faith. *Dybach v. Fla. Dep't of Corrections*, 942 F.2d 1562, 1566-67 (11th Cir. 1991). The district court held that Farmworkers did not establish that Bland's violation of the FLSA was willful or that it acted in bad faith. Farmworkers appeal these holdings.

To establish willfulness, Farmworkers must show that Bland "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Neither negligence, nor even unreasonable conduct, is sufficient to prove willfulness. *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1324 (11th Cir. 2007*)*. It is Farmworkers' burden to prove willfulness.

In order to establish its good faith, Bland must prove both that it acted with a good faith belief that its procedures did not violate the law and that it had reasonable grounds for believing this. *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1272 (11th Cir. 2008).

The determinations of willfulness and good faith are mixed questions of fact and law. *Allen*, 495 F.3d at 1324. To the extent that the district court made findings of fact that led it to the legal conclusions that Bland's actions were neither willful nor taken in bad faith, we review them under the clearly erroneous standard. *Reich v. Dep't of Conservation and Natural Res.*, 28 F.3d 1076, 1084 (11th Cir. 1994).

As noted above, Farmworkers initial claim in this case was that Bland had engaged in an intentional scheme to forge pay records in order to systematically underpay Farmworkers. After abandoning this claim ("We are saying that the hours are inaccurate. We are not alleging that there is an intentional doing of that."), Farmworkers argued that willfulness was demonstrated by the fact that Bland had been sued on six prior occasions over the past sixteen years by seasonal workers and was, therefore, on notice of their FLSA obligations. Farmworkers argued that the new violation demonstrates as a matter of law that Bland acted willfully.

The district court, however, noted that despite prior FLSA lawsuits against it, there had never been a single finding of a Bland FLSA violation.[11] Furthermore, the district court found that Bland's accounting procedures

---

[11] The cases were settled without trial.

14

demonstrated not only that it knew what its FLSA obligations were, but that it actively sought to ensure that they were met. The court noted that Bland's payroll clerk was a qualified accountant (master's degree in accounting) and that her credible testimony was that she took great care to record Farmworkers hours correctly and to correct error whenever she was made aware of it. She testified to several occasions on which she consulted with individual Farmworkers about their hours and corrected her records. Based upon these facts, the district court concluded that Bland did not act in reckless disregard of its obligations under the FLSA.

The district court relied upon these same findings of fact to conclude that Bland acted in good faith in attempting to discharge its FLSA obligations. The court recounted Bland's recording of Farmworkers' hours on a daily basis, its accountant's review of these tally sheets and use of computer software to record them, her consultation with Farmworkers to check whether the recorded hours were proper, and her correction of error. The district court concluded:

> Defendant knew its operations were governed by the FLSA and subjectively believed it was abiding by the law's requirements. The safeguards it set up provided Defendant an objectively reasonable basis for this belief.
> . . . . Defendant acted in good faith.

15

We have reviewed the record, including the transcripts of the trial testimony regarding these record-keeping procedures and conclude that there is no clear error in the district court's findings of fact. Therefore, we hold that there is no reversible error in its legal conclusions that Bland's violation of the FLSA was not willful and that it acted in good faith.[12]

### III.

For the foregoing reasons, the judgment of the district court is due to be affirmed with the exception of the housing credit award to Bland. The case shall be remanded for recalculation of damages without the housing credit.

AFFIRMED IN PART, REVERSED IN PART, REMANDED.

---

[12] We find no reversible error as to any other issue on appeal.

JORDAN, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority in all respects but one. In my view, the district court's lack of explanation for the finding of 30 minutes per week (or 5-6 minutes per day) of compensable time warrants a remand.

We have recognized that in certain cases a district court must explain how it reached a specific factual finding for there to be meaningful appellate review. *See, e.g., Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1136 (11th Cir. 1984) (vacating and remanding because "the district court did not explain how it arrived at the twenty-cent figure" and instructing district court to "provide a full explanation"); *Mutual Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1326-27 (11th Cir. 2004) ("The district court offered no explanation as to how it reached the conclusion that the offshore insurers' denials were reasonable. Without explanation, it is impossible for us to determine whether or not the district court acted within the bounds of its discretion."); *Imperial Residential Design, Inc. v. Palms Dev. Group, Inc.*, 29 F.3d 581, 583 (11th Cir. 1994) (per curiam) ("Before we can effectively review this appeal, we need an explanation from the district court about its factual and legal conclusions"). In *Carmichael*, for example, the panel remanded because the district court, after finding wage discrimination, did not explain how it arrived at its determination of the back pay to be awarded to the plaintiff. *See* 738 F.2d at 1135

("The court did not explain how it had arrived at the 20 cents an hour figure."). The panel noted that the plaintiff had introduced substantial evidence indicating that the amount should be higher than the 20 cent figure but the "trial court's opinion gives no indication why this evidence was disregarded." *Id.*

As in *Carmichael,* a remand is appropriate here. The farmworkers claimed an average deficiency in recorded hours of 2.4 hours per day, but the district court awarded only 5-6 minutes per day. I recognize that the district court rejected some of the farmworkers' evidence, but that rejection is insufficient, in my view, to permit meaningful appellate review. First, the district court did not provide any explanation for its finding that the farmworkers were underpaid by 30 minutes per week. Second, the finding was not supported by any citation to the record. Third, the 30-minute figure was not proposed by either of the parties, making it all the more difficult to determine where it came from.